IN THE

# United States Court of Appeals for the Sixth Circuit

————————

DEARREA KING,

*Plaintiff-Appellant,*

v.

CITY OF COLUMBUS, OHIO. ET AL.,

*Defendants-Appellees.*

————————

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
No. 1:18-CV-01060 (HON. EDMUND A. SARGUS JR.)

————————

## BRIEF OF PLAINTIFF-APPELLANT KING
————————

Sarah Gelsomino (0084340)
FRIEDMAN, GILBERT + GERHARDSTEIN
50 Public Square, Suite 1900
Cleveland, OH 44113-2205
T: 216-241-1430
F: 216-621-0427
sarah@FGGfirm.com

M. Caroline Hyatt (0097269)
FRIEDMAN, GILBERT + GERHARDSTEIN
35 East 7th Street, Suite 201
Cincinnati, Ohio 45202
T: 513-572-4200
F: 216-621-0427
caroline@FGGfirm.com

*Counsel for Plaintiff-Appellant*

**DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST**

Pursuant to Sixth Circuit Rule 26.1, Plaintiff-Appellant offers the following disclosures:

Plaintiff-Appellant Dearrea King is an individual and not a subsidiary or affiliate of a publicly owned corporation.

No publicly traded corporation has a financial interest in the outcome of this appeal.

*/s/ M. Caroline Hyatt*
Attorney for Plaintiff-Appellant Campbell

Date: December 4, 2023

T<span>ABLE OF</span> C<span>ONTENTS</span>

D<span>ISCLOSURE OF</span> C<span>ORPORATE</span> A<span>FFILIATIONS AND</span> F<span>INANCIAL</span> I<span>NTEREST</span> ............... ii

Table of Contents ................................................................................... iii

Table of Authorities ................................................................................v

S<span>TATEMENT IN</span> S<span>UPPORT OF</span> O<span>RAL</span> A<span>RGUMENT</span> .................................... xii

Statement of Jurisdiction....................................................................... 1

Statement of Issues................................................................................ 2

Statement of the Case............................................................................ 3

Summary of the Argument..................................................................... 5

Argument................................................................................................ 7

**I.    The District Court Erred in Denying Plaintiff's Motion for Judgment as a Matter of Law Pursuant to Rule 50(b). ............................................7**

   A.   Standard of Review. ................................................................. 7

   B.   Judgment as a Matter of Law Should Have Been Granted in Plaintiff's Favor Because Reasonable Minds Could Come to But One Conclusion.. 7

**II.   The District Court Erred in Denying Plaintiff's Motion for a New Trial Pursuant to Rule 59(a). ..............................................................13**

   A.   Standard of Review. ...............................................................14

   B.   A New Trial is Warranted Because the Verdict was Against the Manifest Weight of the Evidence. .........................................................14

   C.   A New Trial is Warranted Because the Jury Instructions were Erroneous and Prejudicial. .......................................................................19

   D.   A New Trial is Warranted Based on the Court's Erroneous Admission of Evidence that Amounted to More than Harmless Error..........................25

   i.   Evidence Regarding Plaintiff's "Cover and Communication Theory" Was Relevant and Admissible and the Failure to Admit that Evidence Prejudiced Plaintiff...................................................................26

   ii.   Evidence Regarding Mason's Prior Uses of Force Was Relevant and Admissible and the Failure to Admit that Evidence Prejudiced Plaintiff. ..............................................................................28

    iii.  Evidence Regarding Mason's Post-incident Reassignment is Relevant and Admissible and the Failure to Admit this Evidence Prejudiced Plaintiff. .................................................................31

    iv.  Evidence of Facts Regarding the Lack of DNA Testing to Compare Mason to the DNA on the BB Gun is Relevant and Admissible and the Failure to Admit this Evidence Prejudiced Plaintiff. ..............................32

    v.  Evidence of Facts Not Known to Mason is Irrelevant and Inadmissible and Admitting this Evidence Prejudiced Plaintiff ..................................34

**III.  The District Court Erred in Granting Summary Judgment to City of Columbus..................................................................................35**

  A.  Standard of Review. ...............................................................36

  B.  Plaintiff Demonstrated a Genuine Dispute of Fact Regarding Whether the Official Policies and Practices of Defendant City Caused the Violation of Plaintiff's Rights. ...................................................36

  C.  Plaintiff Demonstrated a Genuine Dispute of Fact Regarding Whether Defendant City Ratified Mason's Prior Uses of Excessive Force and Caused the Violation of Plaintiff's Rights. ...............................39

  D.  Plaintiff Demonstrated a Genuine Dispute of Fact Regarding Whether Defendant City's Inadequate Training and Supervision of Mason Caused the Violation of Plaintiff's Rights. ...........................................44

  E.  Plaintiff Demonstrated Genuine Dispute of Fact Regarding Whether Defendant City of Columbus Maintained a Custom of Tolerance and Acquiescence to the Use of Excessive Force and Caused the Violation of Plaintiff's Rights. .................................................................47

Conclusion ....................................................................................53

**CERTIFICATE OF COMPLIANCE**................................................55

**CERTIFICATE OF SERVICE**........................................................55

**ADDENDUM:** ............................................................................56

# TABLE OF AUTHORITIES

## Cases

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144 (1970)………………………………………………………...37

*Alley v. Bettencourt*,
134 Ohio App.3d 303, 730 N.E.2d 1067 (4th Dist. 1999)…………………..24

*Anderson v. Massillon*,
134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266………………...21, 34

*Arendale v. City of Memphis*,
519 F.3d 587 (6th Cir.2008)………………………………………………...48

*Barnes v. Owens-Corning Fiberglas Corp.*,
201 F.3d 815 (6th Cir.2000)………………………………………………...14

*Bletz v. Gribble*,
641 F.3d 743 (6th Cir.2011)………………………………………………...10

*Bouggess v. Mattingly*,
482 F.3d 886 (6th Cir.2007)…………………………………………………8

*Boyd v. Baeppler*,
215 F.3d 594 (6th Cir.2000)…………………………………………………9

*Brandenburg v. Cureton*,
882 F.2d 211 (6th Cir.1989)………………………………………………...10

*Brown v. Chapman*,
814 F.3d 447 (6th Cir.2016)………………………………………………...47

*Brown v. Shaner*,
172 F.3d 927 (6th Cir.1999)………………………………………………...45

*Burgess v. Fischer*,
    735 F.3d 462 (6th Cir.2013)……………………………………...15, 20, 35

*Caudill v. City of Columbus*,
    2017-Ohio-7617, 97 N.E.3d 800 (10th Dist.)……………………………….23

*City of Canton v. Harris*,
    489 U.S. 378 (1989)……………………………………………...35, 45, 46

*City and Cty. of S.F. v. Sheehan*,
    575 U.S. 600 (2015)…………………………………………………...27

*City of St. Louis v. Praprotnik*,
    485 U.S. 112 (1988)……………………………………………39, 41-43

*Cooper v. City of Columbus*,
    No. 22-3251, 2023 WL 1434055 (6th Cir.2023)……………………………24

*David v. City of Bellevue*,
    706 F.App'x 847 (6th Cir.2017)…………………………………………...9

*Davis v. Jellico Cnty. Hosp., Inc*,
    912 F.2d 129 (6th Cir.1990)……………………………………………...13

*Denhof v. City of Grand Rapids*,
    494 F.3d 534 (6th Cir.2007)……………………………………………...15

*Dickerson v. McClellan*,
    101 F.3d 1151 (6th Cir.1996)…………………………………………9, 34

*Dunn v. Savage (In re Saffady)*,
    524 F.3d 799 (6th Cir.2008)……………………………………………...13

*EEOC v. New Breed Logistics*,
    783 F.3d 1057 (6th Cir.2015)…………………………………………..7, 8

*Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.*,
    455 F.3d 690 (6th Cir.2006)……………………………………………44, 45

*EPAC Techs., Inc. v. HarperCollins Christian Publishing, Inc.*,
   810 F.App'x 389 (6th Cir.2020)……………………………………………19

*Ewolski v. City of Brunswick*,
   287 F.3d 492 (6th Cir.2002)…………………………………………………...24

*Garner v. Memphis Police Dep't*,
   8 F.3d 358 (6th Cir.1993)……………………………………………35, 36

*Goodwin v. City of Painesville*,
   781 F.3d 314 (6th Cir.2015)………………………………………………...21

*Goodwin v. Richland Cty.*,
   832 F.App'x 354 (6th Cir.2020)……………………………………...11, 12

*Graham v. Connor*,
   490 U.S. 386 (1989)………………………………………………...20, 22, 38

*Gray v. Toshiba Am. Consumer Prods., Inc.*,
   263 F.3d 595 (6th Cir.2001)………………………………………………….7

*Hartman v. Great Seneca Fin. Corp.*,
   569 F.3d 606 (6th Cir.2009)………………………………………………...36

*Helfrich v. Lakeside Park Police Dep't*,
   497 F.App'x 500 (6th Cir.2012)……………………………………………29

*Hicks v. Scott*,
   958 F.3d 421 (6th Cir.2020)…………………………………………………9

*Holmes v. City of Massillon*,
   78 F.3d 1041 (6th Cir.1996)…………………………………………13, 14

*Hornback v. Czartorski*,
   No. 3:20-CV-703-RGJ, 2022 WL 4279725 (W.D. Ky. Sept. 15, 2022)…...29

*Jackson v. City of Cleveland*,
   925 F.3d 793 (6th Cir.2019)……………………………………..35, 36, 45

*Jordan v. Howard*,
    2d Dist. Montgomery No. 29190, 2021-Ohio-4025)…………………………..24

*Kendel v. Local 17–A UFCW*,
    512 F.App'x 472 (6th Cir.2013)…………………………………………14, 19, 25

*King v. Taylor*,
    694 F.3d 650 (6th Cir.2012)…………………………………………………...10

*Lemmon v. City of Akron*,
    768 F.App'x 410 (6th Cir.2019)……………………………………10, 11, 39

*Livermore ex rel Rohm v. Lubelan*,
    476 F.3d 397 (6th Cir.2007)………………………………………...10, 22, 26

*Lovett v. Cole*,
    No. 1:11-cv-277, 2014 WL 5802667 (S.D. Ohio Nov. 7, 2014)……………29

*MacNamara v. Gustin*,
    2d Dist. Montgomery No. 17575, 1999 WL 355844 (June 4, 1999)……22, 23

*Monell v. Dept. of Social Serv.*,
    436 U.S. 658 (1978)………………………………………………………..35-37

*Moore v. City of Cleveland*,
    2017-Ohio-1156, 87 N.E.3d 858 (8th Dist.)………………………………...22

*Naselroad v. Mabry*,
    763 F.App'x 452 (6th Cir.2019)…………………………………………….12

*North v. Cuyahoga County*,
    754 F.App'x 380 (6th Cir.2018)…………………………………………….35

*Otero v. Wood*,
    316 F.Supp. 2d 612 (S.D. Ohio 2004)……………………………………….12

*Paige v. Coyner*,
    614 F.3d 273 (6th Cir.2010)………………………………………………...37

*Pollard v. City of Columbus,*
    780 F.3d 395 (6th Cir.2015)……………………………………………10, 24

*Presnall v. Huey,*
    657 F.App'x 508 (6th Cir.2016)……………………………………………..9

*Radvansky v. City of Olmstead Falls,*
    496 F.3d 609 (6th Cir.2007)……………………………………………...7, 14

*Ragsdale v. Sidoti,*
    No. 5:12 CV 2484, 2015 WL 10986351 (N.D. Ohio July 7, 2015)…………29

*Redrick v. City of Akron, Ohio,*
    No. 21-3027, 2021 WL 5298538 (6th Cir. Nov. 5, 2021)………………..9, 11

*Ruth v. Jennings,*
    136 Ohio App.3d 370, 375-376, 736 N.E.2d 917 (12th Dist. 1999)…………24

*Sigley v. City of Parma Heights,*
    437 F.3d 527 (6th Cir.2006)……………………………………………...36

*Spears v. Akron Police Dept.,*
    9th Dist. Summit No. 24847, 2010-Ohio-632………………………………23

*Spengler v. Worthington Cylinders,*
    615 F.3d 481 (6th Cir.2010)……………………………………………….8

*Strickland v. Owens Corning,*
    142 F.3d 353 (6th Cir.1998)……………………………………………...14

*Tennessee v. Garner,*
    471 U.S. 1 (1985)……………………………………………………12, 15

*Thomas v. City of Chattanooga,*
    398 F.3d 426 (6th Cir.2005)……………………………………………...48

*Thomas v. City of Columbus,*
    854 F.3d 361 (6th Cir.2017)……………………………………9, 11, 12, 26

*Thompson v. McNeill*,
    53 Ohio St.3d 102, 559 N.E.2d 705 (1990)…………………………………21

*U.S. Diamonds & Gold v. Julius Klein Diamonds LLC*,
    No. C-3-06-371, 2009 WL 1362555 (S.D. Ohio May 13, 2009)……………19

*U.S. v. Mize*,
    498 F.Supp.3d 978 (S.D. Ohio 2020)………………………………………29

*U.S. v. Trujilo*,
    376 F.3d 593 (6th Cir.2004)……………………………………………...28

*U.S. v. Whittington*,
    455 F.3d 736 (6th Cir.2006)……………………………………………31, 32

*Williamson v. Owens-Illinois, Inc*.,
    787 F.2d 594 (Table), 1986 WL 16533 (6th Cir.1986)……………………..14

*Wilson v. Gregory*,
    3 F.4th 844 (6th Cir.2021)…………………………………………20, 21

*Woods v. Miamisburg City Sch*.,
    254 F.Supp. 2d 868 (S.D. Ohio 2003)……………………………………23

*Woollacott v. Andreas*,
    8th Dist. Cuyahoga No. 100168, 2014-Ohio-1079……………………...22, 23

*Wright v. City of Euclid*,
    962 F.3d 852 (6th Cir.2020)……………………………………………...52

*Wrinn v. Ohio State Hwy. Patrol*,
    10th Dist. Franklin No. 11AP–1006, 2013-Ohio-1141…………………23, 24

## Statutes and Rules

28 U.S.C. § 1291………………………………………………………………1

28 U.S.C. § 1331………………………………………………………………1

28 U.S.C. § 1343……………………………………………………………1

28 U.S.C. § 1367……………………………………………………………1

42 U.S.C. § 1983…………………………………...1, 20, 31, 35, 37, 48

Fed. R. Civ. P. 50……………………………………………………………7

Fed. R. Civ. P. 59…………………………………………………………..13

Fed. R. Civ. P. 56………………………………………………………...36

O.R.C. § 2744.03………………………………………………………16, 20

**STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Plaintiff-Appellant respectfully requests that the Court schedule oral argument in this case to assist the Court in understanding any outstanding factual and legal issues the Court deems relevant.

## STATEMENT OF JURISDICTION

The United States District Court of the Southern District of Ohio exercised subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, § 1343(a)(3) and (4) because Plaintiff-Appellant's civil rights action arose under a federal statute, 42 U.S.C. § 1983. Plaintiff-Appellant's claims also included state law claims that were so related to the federal claims that supplemental jurisdiction was available under 28 U.S.C. § 1367. After trial, Plaintiff filed a post-trial motion. On September 19, 2023, the District Court denied Plaintiff's Motion. (Order on Post-Trial Motion, R.247). This final order disposed of all parties' claims. On October 6, 2023, Plaintiff filed a timely Notice of Appeal. (Notice of Appeal, R.248). This Court therefore has jurisdiction over this appeal of the District Court's entry of final judgment on Plaintiff-Appellant's claims. 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1. The District Court erred in denying Plaintiff's Motion for Judgment as a Matter of Law on her claims against Defendant Mason.

2. The District Court erred in denying Plaintiff's Motion for a New Trial on her claims against Defendant Mason.

3. The District Court erred in granting summary judgment to Defendant City of Columbus.

On September 14, 2016, thirteen-year-old Tyre King was shot and killed by City of Columbus police officer Bryan Mason. When Mason encountered Tyre, he was responding to a call for a robbery committed by a group of kids. Tyre and a group of older teens fled the area when police approached them, and Mason pursued them, gun already drawn. When Mason confronted Tyre and nineteen-year-old Demetrius, he ordered them to the ground. Demetrius dropped to the ground. Tyre, a child, panicked and fled and Mason responded by shooting him three times. As Tyre bled out, Mason called Tyre and Demetrius "dumb n******" and told Tyre "you should have got down."

Mason was not a good cop who made a reasonable mistake when he shot a child with a BB gun, but a danger to the whole community. He shot first and asked questions later. In the seven years prior to shooting Tyre King, Mason was the subject of dozens of separate use of force reports, including three shootings. (Summary of Mason Citizen Complaints and Internal Investigations, R.141-11, PID#4269-4346; Excerpts EARS Reviews, R.141-18, PID#4639-4640 (Mason in top 5% for most uses of force); "Just 6% of Columbus Police Officers Account for Half of All Force Reports, R.132-3, PageID#2752-2757). It is "unusual" for a police officer to use deadly force this many times in their entire career, and Mason did so in only seven years. (Jacobs 30(b)(6) Dep., R.141-12, PID#4486). In fact, "it's

unusual to have one." (*Id.*). After he shot and killed Tyre King, Mason was "reassigned… for… the protection of the community." (Bash 30(b)(6) Dep., R.141-5, PID#3955).

On September 14, 2018, Plaintiff filed suit against Defendants Mason and the City of Columbus, raising constitutional and state law claims against Mason and *Monell* claims against the City for having policies and practices that used Mason's unconstitutionally excessive use of deadly force. (R.1). The Defendants both filed motions for summary judgment. (Mason Motion, R.136; City Motion, R.137). The District Court granted summary judgment to the City but denied summary judgment to Mason, and the claims against Mason proceeded to trial. (Order on Summary Judgment, R.150).

At trial, the manifest weight of the evidence showed that when Mason ordered Tyre to the ground, Tyre "stutter-stepped" back and forth, trying to decide what to do, and was attempting to flee, with the BB gun Demetrius used to commit the robbery in his pants, when Mason shot him three times. (Trial Transcripts, R.240-246). The first shot hit Tyre square in the side of the head, and the other two shots hit him as he fell. Even if Defendant Mason's testimony that Tyre was not fleeing is accepted as true, contrary to the manifest weight of the evidence, it is undisputed that Tyre never raised the BB gun at anyone. He never gave any indication that he was willing to or about to use the BB gun.

Despite this, the jury entered a verdict for Mason, finding that he did not use excessive force, that he did not batter Tyre, and that his actions were not reckless. (Verdict Forms, R.233). Because Plaintiff was entitled to judgment as a matter of law, the verdict was against the manifest weight of the evidence (*id*.), the trial court gave erroneous jury instructions (Jury Instructions, R.231), and the trial court erroneously failed to admit relevant evidence and admitted irrelevant evidence that prejudiced Plaintiff (Order re Motion in Limine, R.223; Order re Tucker Motion in Limine, R.222), Plaintiff filed a post-trial motion, moving for judgment as a matter of law, or in the alternative, for a new trial. (Post-Trial Motion, R.236).

The District Court denied Plaintiff's motion. (Order re Post-Trial Motion, R.247). At that time, the verdict regarding the claims against Mason and the trial court's pre-trial orders, including the grant of summary judgment to the City and the court's evidentiary orders, became final. Because the District Court erred in denying Plaintiff's Motion for Judgment as a Matter of Law and erred in granting Defendant City's Motion for Summary Judgment, Plaintiff filed a notice of appeal. (Notice of Appeal, R.248).

## SUMMARY OF THE ARGUMENT

The District Court erred in denying Plaintiff's Motion for Judgment as a Matter of Law because it is undisputed that Tyre King never pointed the BB gun at any person and undisputed that there was no other indication that he was willing to

and about to use the BB gun. Under Sixth Circuit law, the use of deadly force is unreasonable in the absence of such an indication and Plaintiff was entitled to judgment in her favor.

In the alternative, the District Court erred in denying Plaintiff's Motion for a New Trial. The jury's verdict was seriously erroneous because the manifest weight of the evidence demonstrated that Tyre was fleeing and the use of deadly force against a fleeing suspect is unreasonable. Plaintiff is also entitled to a new trial based on improper jury instructions. Despite the fact that the legal standards applicable to Plaintiff's constitutional and state law claims are substantively different, the jury received instructions that if they decided Defendant Mason's actions were "objectively reasonable" that they "must find that he did not act recklessly." This does not accurately state the law and caused prejudice to Plaintiff. Plaintiff is also entitled to a new trial based on the erroneous admission of evidence that amounted to more than harmless error. This includes evidence from Plaintiff's police procedure expert and evidence of Mason's highly unusual history of using force, including his reassignment after the shooting.

Finally, the District Court erred in granting summary judgment to Defendant City of Columbus because Plaintiff presented evidence demonstrating genuine disputes of material fact as to whether Defendant City's policies and practices caused the violation of Plaintiff's constitutional rights.

**ARGUMENT**

## I. THE DISTRICT COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(B).

Plaintiff is entitled to judgment as a matter of law on her claims against Mason. Plaintiff raised Rule 50(b) prior to the close of trial and renewed it in a post-trial motion. (Post-Trial Motion, R.236). Because there is no material dispute for the jury and reasonable minds could come to only one conclusion, in favor of Plaintiff, the District Court erred in denying Plaintiff's Motion.

### A. Standard of Review.

Appellate courts review a district court's denial of a Rule 50(b) motion for judgment as a matter of law *de novo*, applying the same standard as the district court. *Radvansky v. City of Olmstead Falls*, 496 F.3d 609, 614 (6th Cir.2007).

### B. Judgment as a Matter of Law Should Have Been Granted in Plaintiff's Favor Because Reasonable Minds Could Come to But One Conclusion.

A motion for judgment as a matter of law may be granted when, "viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Radvansky*, 496 F.3d at 614, citing *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir.2001). In making this determination, this court "may not weigh the evidence, pass on the credibility of witnesses, or substitute [its] judgment for that of the jury." *EEOC v. New Breed*

*Logistics*, 783 F.3d 1057, 1065 (6th Cir.2015), citing *Spengler v. Worthington Cylinders*, 615 F.3d 481, 489 (6th Cir.2010). Judgment may be directed when the facts are sufficiently clear such that the law requires a particular result.

Accepting the facts in the light most favorable to Mason, Tyre King was facing Mason, (Trial Transcript Vol. II, R.241, PID#8564), doing a stutter-step to elude being arrested, (*id.*, PID#8559), and began to tug on the BB gun in his waistband. (*Id.*, PID#8560). He tugged on the BB gun 3-5 times, (*id.*), and the gun cleared his waistband. (*Id.*, PID#8566). However, even accepting the facts in the light most favorable to Mason, Tyre never pointed the BB gun at Mason and only pointed it downward. (*Id.*, PID#8552, 8566). This is not a case where the dispute is over whether the decedent pointed a weapon at officers – rather, Mason *admits* that Tyre never pointed the BB gun at anyone. (*Id.*). Based on these undisputed facts, Mason used excessive deadly force and Plaintiff is entitled to judgment as a matter of law.

The District Court is correct that pointing a gun at someone is "not always required before an officer can respond with deadly force." (Order re Post-Trial Motion, R.247, PID#9489). On the other hand, mere possession of a weapon, without more, is insufficient. *Bouggess v. Mattingly*, 482 F.3d 886, 896 (6th Cir.2007) ("[E]ven when a suspect has a weapon, but the officer has no reasonable belief that the suspect poses a danger of serious physical harm to him or others,

deadly force is not justified."); *Thomas v. City of Columbus*, 854 F.3d 361, 366 (6th Cir.2017) ("[W]e do not hold that an officer may shoot a suspect merely because he has a gun in his hand.").

To justify the use of deadly force, there must be "some indication that the possessor of a weapon is willing to and is about to use the weapon to harm officers or others." *Redrick v. City of Akron, Ohio*, No. 21-3027, 2021 WL 5298538, *4 (6th Cir. Nov. 5, 2021). This indication is usually demonstrated by evidence that the possessor of the weapon pointed it at another person. Thus, the "reasonableness of an officer's asserted fear will often turn on whether an armed suspect pointed her weapon at another person." *Hicks v. Scott*, 958 F.3d 421, 435 (6th Cir.2020), citing *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir.2000) ("[T]he issue that is material here is ... whether [the suspect] pointed his weapon at the officers and thus posed an immediate threat to them."); *David v. City of Bellevue*, 706 F.App'x 847, 851 (6th Cir.2017) ("The key fact ... is whether [the suspect] had his gun pointed at the officers."); *Presnall v. Huey*, 657 F.App'x 508, 512 (6th Cir.2016) ("Time and time again, we have rejected Fourth Amendment claims ... when the officers used deadly force only after the suspect[ ] had aimed [her] gun[ ] at [them] ...."); *Dickerson v. McClellan*, 101 F.3d 1151, 1154, 1163 (6th Cir.1996) (denying qualified immunity when officers shot a man who had fired nine shots inside his home and made verbal threats but at that moment was simply "walk[ing] slowly toward his front door ... his

arms down by his sides"); *King v. Taylor*, 694 F.3d 650, 653, 663-664 (6th Cir.2012) (denying qualified immunity when officers shot a man who had threatened to kill someone but had his gun "resting on his right hip" while lying on the couch); *Bletz v. Gribble*, 641 F.3d 743, 752 (6th Cir.2011) (denying qualified immunity when suspect was lowering his gun when he was shot).

In *Brandenburg v. Cureton*, 882 F.2d 211, 215 (6th Cir.1989), the Sixth Circuit found a question for the jury based on a dispute over whether or not Brandenburg actually pointed his weapon "directly at" officers because there was evidence that supported finding that he was not grasping the trigger and may not have been aiming his weapon at the officers at the time. Notably, this was despite evidence that appears undisputed that he had already fired the weapon six times, threatened to kill the officers if they did not leave his property, and that he picked the rifle back up after one of the officers fired a warning shot, "and at this time, [the defendant] fired his weapon and killed Brandenburg." *Id*. at 213.

The fact that Brandenburg picked up his rifle right before being killed is critical. Not only is possession insufficient to justify the use of deadly force, but so is reaching for a weapon. *Lemmon v. City of Akron*, 768 F.App'x 410, 418 (6th Cir.2019), citing *Pollard v. City of Columbus*, 780 F.3d 395 (6th Cir.2015); *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397 (6th Cir.2007).

Here it is undisputed that Tyre did not point the BB gun at anyone, therefore must be some other "indication" that he "was willing to and is about to use the weapon to harm officers or others." *Redrick*, 2021 WL 5298538, *4. The District Court points to the fact that Tyre was reaching for the BB gun. (Order re Post-Trial Motion, R.247, PID#9489-9490). However, because reaching for a weapon is also insufficient, the District Court erred.

Because possessing and reaching for a weapon do not provide sufficient indication, there is no evidence whatsoever in the record that a jury could rely on to find that Tyre King gave an indication that he was willing and about to use the BB gun to harm someone. Most cases where the use of deadly force was justified despite the suspect never pointing a weapon involve a suspect that was actively coming at an officer to attack them. *See Lemmon*, 768 F.App'x at 417 (officer reasonably believed that suspect was armed, was deliberately provoking officers to shoot, and was moving suddenly in direction of officer); *Thomas*, 854 F.3d at 366 (suspect was running at officer with gun drawn). In these cases, even though a weapon was not pointed at the officer, the suspect indicated their willingness to harm the officer by attacking the officer while armed (or while the officer reasonably believed them to be armed). Likewise, in other cases where the use of deadly force is justified, there is some other indication of threat. *See Goodwin v. Richland Cty.*, 832 F.App'x 354

(6th Cir.2020) (officers heard "pop" and reasonably believed that they were being fired upon). No such facts are present here.

In fact, there are undisputed facts that weigh further against the reasonableness of Mason's use of deadly force. "Sometimes, the time or space available to an officer may mean that the reasonable thing to do is to monitor the suspect, issue a warning, or take cover." *Thomas*, 854 F.3d at 366-67. The Supreme Court has held that a warning is necessary where feasible. *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985); *Otero v. Wood*, 316 F.Supp. 2d 612, 624 (S.D. Ohio 2004) ("A suspect has the right to a warning—absent exceptional circumstances that would render a warning impracticable—before police use deadly force"). Mason admits there was a car between him and Tyre. (Trial Transcript Vol. II, R.241, PID#8566). Because a reasonable officer would have concluded that cover was available, that weighs further against the reasonableness of the use of deadly force. And the availability of cover demonstrates that a warning, or a command to drop the BB gun, was feasible. Mason did neither. (*Id*., PID#8545-8546). For these reasons as well, Mason's use of force was objectively unreasonable.

Because it is undisputed that Tyre's gun "was always pointed at the ground, never directly at an officer, and [Tyre] did not indicate, verbally or physically, an intention to harm the officers," Mason's use of preemptive deadly force violated the Fourth Amendment. *Naselroad v. Mabry*, 763 F.App'x 452, 461 (6th Cir.2019). For

this reason, even accepting all facts in the light most favorable to Mason, Plaintiff is

entitled to judgment as a matter of law on the excessive force claim and the reckless

wrongful death claim. Because Plaintiff is entitled to judgment as a matter of law,

the District Court erred in denying Plaintiff's Motion. For these reasons, Plaintiff

respectfully requests that this Court reverse.

## II. THE DISTRICT COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR A NEW TRIAL PURSUANT TO RULE 59(A).

If this Court does not find that Plaintiff is entitled to judgment as a matter of

law, Plaintiff is entitled to a new trial on her claims against Mason. After a verdict

was entered in Mason's favor, Plaintiff moved for a new trial. (Post-Trial Motion,

R.236). "The governing principle in the court's acting on a motion for new trial is

whether, in the judgment of the trial judge, such course is required in order to prevent

an injustice; and where an injustice will otherwise result, the trial judge has the duty

as well as the power to order a new trial." *Dunn v. Savage (In re Saffady)*, 524 F.3d

799, 808 (6th Cir.2008), citing *Davis v. Jellico Cnty. Hosp., Inc*, 912 F.2d 129, 133

(6th Cir.1990).

The Sixth Circuit has interpreted this language to mean that a new trial is

warranted under Rule 59(a) "when a jury has reached a 'seriously erroneous result'

as evidenced by: (1) the verdict being against the weight of the evidence; (2) the

damages being excessive; or (3) the trial being unfair to the moving party in some

fashion, i.e., the proceedings being influenced by prejudice or bias." *Holmes v. City*

*of Massillon*, 78 F.3d 1041, 1045-1046 (6th Cir.1996). A party may also move for a new trial based on a trial court's erroneous admission of evidence or improper jury instructions amounting to "more than harmless error." *Kendel v. Local 17–A UFCW*, 512 F.App'x 472, 479 (6th Cir.2013). The District Court erred in denying Plaintiff's Motion because the following errors warrant a new trial in order to prevent an injustice, both individually and cumulatively.

### A. Standard of Review.

"The authority to grant a new trial is confided almost entirely to the exercise of discretion on the part of the trial court." *Williamson v. Owens-Illinois, Inc.*, 787 F.2d 594 (Table), 1986 WL 16533 at *3 (6th Cir.1986), quoting 11 Wright & Miller, Federal Practice and Procedure, § 2806 (1973). Thus, appellate courts review a district court's denial of a new-trial motion for abuse of discretion, reversing if the Court has a "definite and firm conviction that the trial court committed a clear error of judgment." *Radvansky*, 496 F.3d at 614, citing *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820 (6th Cir.2000).

### B. A New Trial is Warranted Because the Verdict was Against the Manifest Weight of the Evidence.

In deciding a motion based on the weight of the evidence, the court "must compare the opposing proofs, weigh the evidence, and set aside the verdict if it is of the opinion that the verdict is against the clear weight of the evidence." *Strickland v. Owens Corning*, 142 F.3d 353, 357 (6th Cir.1998). The court "should deny the

motion if the verdict is one which could reasonably have been reached, and the verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable." *Id*. That is, the "court is not to set aside the verdict simply because it believes that another outcome is more justified." *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir.2007).

In this case, the verdict was against the manifest weight of the evidence. Comparing the proofs and weighing the evidence, the manifest weight of the evidence supports that Tyre King was fleeing when Mason shot him three times. This is a critical fact, because if Tyre was fleeing, then the use of force was objectively unreasonable. *Garner*, 471 U.S. at 111 (the "use of deadly force to prevent the escape" of a suspect "is constitutionally unreasonable" because "the threat from failing to apprehend him does not justify the use of deadly force to do so"). Mason has never disputed this and testified that he was trained that he is not allowed to shoot someone because they are running away. (Trial Transcript Vol. II, R.241, PID#8562). Thus, because the manifest weight of the evidence does demonstrate that Tyre King was fleeing, the verdict for Mason was against the manifest weight of the evidence.[1]

---

[1] This applies to both counts. If Mason's actions were objectively unreasonable under the Fourth Amendment, they were also reckless. *See e.g., Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir.2013) ("[B]ecause we find that there is a question as to

Here, the undisputed evidence demonstrated that Mason's first shot was the head shot that entered Tyre King's temple. Plaintiff's biomechanical expert, Jeremy Bauer, opined on the order of the shots. He opined that the head shot was the first shot, because it occurred when Tyre was still standing upright and lined up with the bullet hole in the fence. (Trial Transcript Vol. II, R.241, PID#8621-8622). Defendants' expert, Matthew Noedel, who does not have Bauer's expertise in biomechanics, does not dispute Bauer's opinion that the head shot was first shot. (Trial Transcript Vol. V, R.246, PID#9289).

If the first shot was the head shot—and it is undisputed that it was—this requires the Court to find that Tyre King was not facing Mason at the time he pulled the trigger, and find instead that Tyre was facing away from Mason at the time that Mason began shooting. This shot went straight through the side of Tyre's head, entering behind his left temple, traveling slightly down and slightly forward, and exited his right temple. (Trial Transcript Vol. II, R.241, PID#8477; *see* Plaintiff's Trial Exhibit 22J).

---

whether [the officers'] conduct was reasonable under the Fourth Amendment, we also find that upon viewing the facts in a light most favorable to Plaintiffs there is a question as to whether the conduct was reckless under § 2744.03(A)(6)(b)"); *Reynolds v. City of Oakwood*, 38 Ohio Ap. 3d 125, 127, 528 N.E.2d 578 (2d. Dist.1987), citing *Botto v. Fischesser*, 174 Ohio St. 322, 325-326 (1963).

Thus, Tyre was facing away from Mason at the time of this shot. (Trial Transcript Vol. II, R.241, PID#8633). His left side was facing Mason, not his front, and specifically, his head was turned significantly away from Mason, at an angle greater than 90 degrees, probably around 110 degrees. (*Id*., PID#8640-8641). This shot damaged his brain stem and he fell where he was. (*Id*., PID#8623). The other two shots were consistent with his position changing as he fell. (*Id*.).

The physical evidence refutes Mason's version of the facts. He testified that Tyre had been fleeing, but then stopped running and began to stutter-step back and forth. (*Id*., PID#8559). It appeared to Mason that Tyre was trying to decide what to do next, and was still trying to evade arrest. (*Id*., PID#8561-8562). He testified that at the time that he shot Tyre, that Tyre was still in this position and was facing him "directly." (*Id*., PID#8564 ("facing each other"); Trial Transcript Vol. IV, R. 243, PID#9057 ("directly facing")). However, he presented no evidence that could explain how Tyre was shot in the side of the head while facing him. In fact, Mason agreed that if the first shot was the head shot, that Tyre could not have been facing him when he made that shot. (Trial Transcript Vol. II, R.241, PID#8565 (agreeing that "if that were the first shot" then he "[w]ouldn't be able to shoot him in the side of the temple if you were facing each other")).

Thus, the manifest weight of the evidence is that Tyre King was facing away from Mason when he began shooting. This then impacts the weight of the evidence

regarding what else Tyre King was doing as he faced 110 degrees away from Mason. There is only one explanation for what Tyre was doing as he faced away from Mason, with two slightly different progressions – he was fleeing. Either Tyre King was fleeing the entire time as he ran away from Mason. Or alternatively, accepting the facts in Mason's favor except to the extent that the manifest weight of the evidence demands otherwise, Tyre King was fleeing, stopped and did a quick stutter-step as he  decided what to do next, and then turned away from Mason as he continued fleeing.

Either way, the manifest weight of the evidence demonstrates that Tyre King was fleeing. Sister Anna Skora testified that Tyre King tried to run away and never tried to shoot anyone. (Skora Dep., R.126-1, PID#1445-1446).[2] Demetrius Braxton testified that Tyre was running away when Mason shot him. (Trial Transcript Vol. III, R. 242, PID#8809). And William Scott testified that it looked like at least two of the shots went into this back, further demonstrating Tyre's body position facing mostly away from Mason. (*Id*., PID#8704, 8707). Even Mason agrees that he assumed that Tyre was trying to get away from law enforcement by stutter-stepping and was trying to figure out what to do. (Trial Transcript Vol. II, R.241, PID#8559, 8562). The manifest weight of the evidence demonstrates that Tyre  then decided to

---

[2] This citation is to the deposition transcript. Sister Anna Skora's testimony at trial was her video-taped deposition testimony.

continue fleeing. Regardless of what motions he was making with his arm, it is undisputed that Tyre King did not pose such a threat that it would have been justified to shoot him as he fled. Thus, because the manifest weight of the evidence supports that he was fleeing at the time Mason began shooting, the use of deadly force was objectively unreasonable and reckless. This Court must set aside the verdict in Mason's favor and order a new trial.

### C. A New Trial is Warranted Because the Jury Instructions were Erroneous and Prejudicial.

A verdict may also be set aside and a new trial ordered based on improper jury instructions amounting to "more than harmless error." *Kendel*, 512 F.App'x at 479. Jury instructions must "accurately state the law." *U.S. Diamonds & Gold v. Julius Klein Diamonds LLC*, No. C-3-06-371, 2009 WL 1362555, *6 (S.D. Ohio May 13, 2009) (internal citation omitted). Thus, a new trial is warranted if jury instructions are erroneous and prejudicial. *EPAC Techs., Inc. v. HarperCollins Christian Publishing, Inc.*, 810 F.App'x 389, 398 (6th Cir.2020). The lower court's instruction to the jury that "[i]f you decide Officer Mason's actions were objectively reasonable, then you must find that he did not act recklessly," does not accurately state the law and caused prejudice to Plaintiff. (Jury Instructions, R.231, PID#7215). For this reason, a new trial was warranted and the District Court erred in denying Plaintiff's Motion.

While it is true that a finding that an officer acted objectively unreasonably under the Fourth Amendment will necessarily deprive the officer of Ohio statutory immunity, *see, e.g., Burgess*, 735 F.3d at 479 ("[B]ecause we find that there is a question as to whether [the officers'] conduct was reasonable under the Fourth Amendment, we also find that upon viewing the facts in a light most favorable to Plaintiffs there is a question as to whether the conduct was reckless under § 2744.03(A)(6)(b)."); *Reynolds*, 38 Ohio App.3d at 127, citing *Botto*, 174 Ohio St. at 325-326, the same is not true in reverse. This is because the question of whether a defendant's actions "constituted a violation of particular federal constitutional rights under § 1983 is a substantially different question than whether [the defendant] acted with malicious purpose, in bad faith, or in a wanton or reckless manner as Ohio law uses those terms." *Wilson v. Gregory*, 3 F.4th 844, 860-861 (6th Cir.2021).

The differences between these standards matter because the evidence used to satisfy them is substantively different. For this reason, instructing the jury to resolve them together deprived Plaintiff of the opportunity to prove his state law claim. The Fourth Amendment standard for excessive force, which controls Plaintiff's first count, asks only whether an officer's actions were "objectively reasonable… without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Thus, an "officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force, nor will an officer's good

intentions make an objectively unreasonable use of force constitutional." *Id*. As a result, the officer's state of mind is irrelevant to the Fourth Amendment standard.

On the other hand, recklessness as defined by Ohio law "is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 33, citing *Thompson v. McNeill*, 53 Ohio St.3d 102, 104-105, 559 N.E.2d 705 (1990). Someone can be "found to be reckless either based on his actual [subjective] knowledge of a risk or under an objective standard." *Wilson*, 3 F.4th at 861, citing *Goodwin v. City of Painesville*, 781 F.3d 314, 334-335 (6th Cir.2015). Thus, unlike a Fourth Amendment violation, which is limited only to evidence of objective reasonableness, recklessness can be satisfied based on objective *or* subjective evidence. The officer's state of mind is relevant here. This difference matters, because a jury could find that Mason's shoot first, ask questions later approach was indifferent to the obvious and unreasonable risk of harm to the citizens of the City of Columbus. *See* Statement of Facts, p. 3-4. Additionally, a jury could find that Mason was motivated at least in part by racial animus. After shooting Tyre, he used racial slurs, telling Tyre and Braxton "you should have got down, you dumb n******." (Trial Transcript Vol. III, R.236-3, PID#7679).

In *MacNamara v. Gustin*, 2d Dist. Montgomery No. 17575, 1999 WL 355844 (June 4, 1999), the court held that reasonable minds could conclude that the officer acted "with a malicious purpose, in bad faith, or in a reckless manner" in tightening the plaintiff's handcuffs in part based on evidence that the defendant said "I do not like you people," which the court explained "could be viewed as evidence of the maliciousness of his conduct." *Id.* at *4, 6. This state of mind evidence would not be relevant under the Fourth Amendment standard, *Graham*, 490 U.S. at 397, but was relevant under Ohio law. Here the jury could have relied on evidence that Mason used racial slurs after shooting Tyre in support of finding his conduct was performed with a sufficiently culpable state of mind, even though this evidence is not relevant to the Fourth Amendment claim.

Likewise, the Sixth Circuit caselaw has adopted a segmenting requirement in its Fourth Amendment jurisprudence which does not apply to state law claims. The Sixth Circuit does not consider whether an officer "acted recklessly in creating the circumstances which required the use of deadly force" but rather views excessive force claims in "segments." *Livermore*, 476 F.3d at 406. However, this segmenting analysis is not found in Ohio law. Ohio courts have found police officers and other municipal employees liable for recklessly creating dangerous circumstances. *See e.g. Moore v. City of Cleveland*, 2017-Ohio-1156, 87 N.E.3d 858 (8th Dist.) (police recklessly released dangerous suspect); *Woollacott v. Andreas*, 8th Dist. Cuyahoga

No. 100168, 2014-Ohio-1079, ¶ 26 (911 dispatcher recklessly mishandled and delayed response).

This includes cases with use of force fact patterns. For example, in *Caudill v. City of Columbus*, 2017-Ohio-7617, 97 N.E.3d 800 (10th Dist.), the court considered the recklessness in the officer's approach, weighing the relative risks of the officer's approach, including knocking on the plaintiff's door and demanding she open it. The court did not refuse to consider this evidence as irrelevant, but rather analyzed the facts of the approach, *id*. at ¶ 27-31, and concluded that "given the many possible outcomes of Sergeant Baker's attempt to assess Julie's condition when he arrived on the scene, it cannot be said… that Sergeant Baker's conduct would in all probability result in injury." *Id*. at ¶ 28. Thus, even if Mason's failure to seek cover, for example, were not relevant to the excessive force claim, it would be *highly relevant* to the state law claim.

Most cases do not even consider Fourth Amendment standards in analyzing whether an officer's use of force was reckless. *See MacNamara*, 1999 WL 355844 (no reference to Fourth Amendment jurisprudence in analysis of an officer's entitlement to Ohio statutory immunity regarding use of force), *Caudill*, 97 N.E.3d 800 (same); *Woods v. Miamisburg City Sch*., 254 F.Supp. 2d 868 (S.D. Ohio 2003) (applying Ohio law, same); *Spears v. Akron Police Dept*., 9th Dist. Summit No. 24847, 2010-Ohio-632 (same); *Wrinn v. Ohio State Hwy. Patrol*, 10th Dist. Franklin

No. 11AP–1006, 2013-Ohio-1141 (same); *Ruth v. Jennings*, 136 Ohio App.3d 370, 375-376, 736 N.E.2d 917 (12th Dist. 1999) (same); *Alley v. Bettencourt*, 134 Ohio App.3d 303, 315, 730 N.E.2d 1067 (4th Dist. 1999) (same).[3]

The cases relied on by the District Court in finding otherwise are distinguishable. While *Pollard* says that it "logically follows" that an officer who acted reasonably did not act recklessly, the court did not consider the issue of segmenting or that recklessness could be satisfied by subjective *or* objective evidence. *Pollard*, 780 F.3d at 404. *Ewolski v. City of Brunswick*, 287 F.3d 492 (6th Cir.2002), does not address this issue at all. There, the court found no culpability "rising above negligence" and because recklessness is a higher standard than negligence, affirmed summary judgment on the state law claims. *Id*. at 517. Even in *Cooper v. City of Columbus*, No. 22-3251, 2023 WL 1434055, *9 (6th Cir.2023), where there was a possible segmenting issue, the court considered, on the facts of the case, whether a jury could find that the officers displayed a "conscious disregard of or indifference to a known or obvious risk" and found that no juror could. The District Court did not permit the jury here to answer that question, and for that reason, the District Court erred.

---

[3] The District Court cited a single Ohio court opinion in support of conflating these standards. (Opinion and Order, R.247, PID#9495-9496, citing *Jordan v. Howard*, 2d Dist. Montgomery No. 29190, 2021-Ohio-4025). However, the weight of authority clearly supports that the standards are different.

Because the standard are different, directing the jury that they "must find that [Defendant Mason] did not act recklessly" if they decided his actions "were objectively reasonable" does not accurately state the law. Further, it is more probable than not that this error materially affected the jury because it prevented the jury from independently considering Count Two. If the jury had independently considered Count Two, it is more probable than not that jury would have found that the evidence of Mason's use of racial slurs, failure to seek cover, and failure to warn Tyre before shooting him, along with all other evidence going to Mason's state of mind, demonstrated recklessness even if they were not objectively unreasonable under the Fourth Amendment. Because this error materially affected the verdict, this prejudiced Plaintiff and warranted a new trial.

### D. A New Trial is Warranted Based on the Court's Erroneous Admission of Evidence that Amounted to More than Harmless Error.

A verdict may also be set aside and a new trial ordered based on a trial court's erroneous admission of evidence amounting to "more than harmless error." *Kendel*, 512 F.App'x at 479. Because the District Court excluded relevant admissible evidence, and allowed admission of irrelevant evidence, and these errors materially affected the verdict, Plaintiff, Plaintiff is entitled to a new trial and the District Court erred in denying Plaintiff's Motion.

### i. Evidence Regarding Plaintiff's "Cover and Communication Theory" Was Relevant and Admissible and the Failure to Admit that Evidence Prejudiced Plaintiff.

The trial court excluded evidence of Plaintiff's "cover and communication theory," including the opinions of Plaintiff's expert, Melvin Tucker, on that issue. (Order re Motion in Limine, R.223, PID#7150-7151; Order re Tucker Motion in Limine, R.222, PID#7138). Because this evidence was admissible and because its exclusion materially affected the verdict, a new trial was warranted and the District Court erred in denying Plaintiff's Motion.

This evidence is relevant because "[s]ometimes, the time or space available to an officer may mean that the reasonable thing to do is to monitor the suspect, issue a warning, or take cover." *Thomas*, 854 F.3d at 366-367. For this reason, the trial court's exclusion of this relevant evidence was contrary to law.

There is a difference between evidence that an officer "acted recklessly in *creating* the circumstances which required the use of deadly force," which has been rejected as a basis for demonstrating a Fourth Amendment violation, *Livermore*, 476 F.3d at 406 (emphasis added), and evidence that the use of deadly force simply was not justified in the moment. *Thomas*, 854 F.3d at 366-367. Under the first theory, the use of force was justified—the officer could "be liable" despite the fact that he "reasonably fired back in self-defense" because his "reckless and unconstitutional provocation created the need to use force." *Livermore*, 476 F.3d at 406. *See also City*

*and Cty. of S.F. v. Sheehan*, 575 U.S. 600, 615 (2015) ("[Plaintiff] cannot establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided."). Plaintiff did not seek to admit evidence that Mason created a deadly confrontation that necessitated the use of deadly force. Rather, Plaintiff sought to admit evidence that the confrontation *had not yet turned deadly*. Because a jury could find that while Mason had reason to believe that Tyre was armed, Tyre had not pulled the BB gun out, or at a minimum, had not pointed it at anyone, and a reasonable officer would have sought cover or attempted to communicate with Tyre and would not have used deadly force. (Tucker Report, R.141-16, PID#4605-4606). Because this evidence is admissible, the court erred in excluding it.

However, even if this *were* the type of evidence that would be irrelevant to a Fourth Amendment claim as evidence that an officer recklessly created a deadly confrontation, the court further erred because the state law standard is substantively different from the Fourth Amendment standard because Ohio law *does* allow for consideration of the officer's recklessness in their approach in analyzing a use of force. *See* Section II(C). Thus, even if Mason's failure to seek cover, for example, were not relevant to the excessive force claim, it would still be relevant to the state law claim.

This error was not harmless. The trial court excluded relevant admissible evidence, that the jury more probably than not would have relied upon to find Mason's use of deadly force, when it was not necessary and when a reasonable officer would have sought cover or attempted to communicate with the suspect, to be objectively unreasonable and reckless. For this reason, a new trial was warranted and the District Court erred in denying Plaintiff's Motion.

ii. ***Evidence Regarding Mason's Prior Uses of Force Was Relevant and Admissible and the Failure to Admit that Evidence Prejudiced Plaintiff.***

The trial court also excluded evidence of Mason's prior uses of force, including the opinions of Plaintiff's expert, Melvin Tucker. (Order re Motion in Limine, R.223, PID#7157-7158; Order re Tucker Motion in Limine, R.222, PID#7139). This was erroneous and prejudicial because evidence regarding Mason's state of mind was relevant to the state law claim and to the availability of punitive damages.

Prior acts evidence is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 403(b). The Sixth Circuit uses a 3-part test to determine prior acts admissibility: (1) whether the act(s) actually occurred, (2) whether the act(s) are probative of a material issue other than character, and (3) whether the act(s) are more probative than prejudicial. *U.S. v. Trujilo*, 376 F.3d 593, 605 (6th Cir.2004).

The District Court found that this evidence was not probative of a material issue other than character. (Order re Motion in Limine, R.223, PID#7158). However, this evidence is probative, because Mason's past uses of deadly force are not intended to prove Mason's propensity towards using deadly force, but rather his state of mind at the time he made the decision to use deadly force on Tyre King. Such evidence is relevant and admissible to punitive damages and Plaintiff's state law claim. *See U.S. v. Mize*, 498 F.Supp.3d 978, 984 (S.D. Ohio 2020) ("three prior instances of excessive force [were] highly probative" and admissible under Rule 404(b) to show state of mind for "reckless disregard of a known and definite federal right") (collecting cases); *Hornback v. Czartorski*, No. 3:20-CV-703-RGJ, 2022 WL 4279725, at *5 (W.D. Ky. Sept. 15, 2022) (admitting evidence of previous uses of force, investigations, and discipline "as highly probative of officer's motive, intent, and absence of mistake as it could relate to punitive damages."); *Ragsdale v. Sidoti*, No. 5:12 CV 2484, 2015 WL 10986351, *3 (N.D. Ohio July 7, 2015), citing *Helfrich v. Lakeside Park Police Dep't*, 497 F.App'x 500, 507-508 (6th Cir.2012) (holding in abeyance Defendant's motion to exclude evidence of prior bad acts in police shooting case because "when a state-law assault claim contains a subjective state of mind test, prior bad acts may potentially be admissible."); *Lovett v. Cole*, No. 1:11-cv-277, 2014 WL 5802667, at *3 (S.D. Ohio Nov. 7, 2014) (similar, in Eighth Amendment excessive force case, noting prior uses of force were "highly relevant").

Because this evidence is probative of a material issue other than character, the exclusion of this evidence was erroneous. Here, the evidence of Mason's prior uses of force is relevant to his state of mind. Evidence regarding Mason's pattern of using more force than necessary and significantly more than his fellow officers, is probative of his reckless state of mind. *See* Statement of the Case, p. 3-4. Additionally, a jury could find that he was motivated in part by racial animus, rather than an actual threat of bodily harm.

This evidence also supports the absence of mistake. Mason has twice shot black people fleeing from him. (Police Involved Death Review Re: Gary Williams, R.141-14, PID#4567-4588). In both cases, he has defended his actions asserting that they were not fleeing but were in the process of raising a weapon. However, in both, this evidence was disputed by other witnesses. A jury could find that in both cases, Mason shot a fleeing black suspect and this is probative of the fact that Mason knew Tyre was fleeing and shot him anyway, and thus did *not* mistakenly believe that he posed a threat.

This evidence is also more probative than prejudicial. Because Mason would have the opportunity to argue that his uses of force were justified, and the trial court could have provided a limiting instruction to the jury that such evidence not be considered as character evidence. This evidence is not more prejudicial than it is probative and it should have been admitted.

This error was not harmless. This evidence was relevant and admissible, and the jury more probably than not would have relied upon it to find Mason's use of deadly force was at least reckless, stripping him of his entitlement to state law immunity, because it was based in part on inappropriate considerations, including Tyre's race, rather than an actual threat of harm. For this reason, a new trial was warranted and the District Court erred in denying Plaintiff's Motion.

### iii. *Evidence Regarding Mason's Post-incident Reassignment is Relevant and Admissible and the Failure to Admit this Evidence Prejudiced Plaintiff.*

The lower court also erred in excluding evidence regarding the basis for Mason's post-incident reassignment. This evidence was relevant to the § 1983 claim, because it refuted the evidence offered by Mason that his use of force was reasonable and complied with City of Columbus policies. For the same reasons, it was also relevant to the question of Mason's recklessness. While the Court found that this evidence was not relevant because the relevant moment was the moment Mason fired his weapon, the "[t]he standard for relevancy is extremely liberal." *U.S. v. Whittington*, 455 F.3d 736, 738-739 (6th Cir.2006). Evidence that the police chief and others in the police department thought, following his use of force against Tyre, that Mason should be reassigned for the protection of the community, because there was "at least some concern that he shouldn't be out there on patrol," (Jacobs 30(b)(6) Dep., R.141-12, PID#4495), has a tendency to make the existence of the facts that

Mason's use of force was reckless and objectively unreasonable more probable, and thus it has at least the "slightest probative worth" and cannot be excluded. *Whittington*, 455 F.3d at 739. For this reason, the trial court should not have excluded this evidence.

This error was not harmless. The District Court excluded relevant admissible evidence, that the jury more probably than not would have relied upon to find Mason's use of deadly force, when a reasonable officer would not have used deadly force, to be objectively unreasonable and reckless. For this reason, a new trial was warranted and the District Court erred in denying Plaintiff's Motion.

### iv. *Evidence of Facts Regarding the Lack of DNA Testing to Compare Mason to the DNA on the BB Gun is Relevant and Admissible and the Failure to Admit this Evidence Prejudiced Plaintiff.*

During trial, Plaintiff sought to question Mason regarding whether or not he had submitted a DNA sample for comparison to the DNA samples found on the BB gun. The trial court excluded this evidence. However, because this evidence is relevant to the question of how the BB gun traveled from Tyre's position to the location it was found in, and significantly undercuts Mason's credibility, excluding this evidence was erroneous.

Plaintiff's expert, Jeremy Bauer, testified that for the BB gun to travel from Tyre's location where he was shot to the position where the BB gun was found, some feet away, Tyre would have had to make a "throwing motion." (Trial Transcript Vol.

II, R.241, PID#8647). He further testified that Mason would have been able to see the motion. (*Id*.). Defendants' expert, Matthew Noedel, did not dispute this. He agreed that Tyre would have had to toss the BB gun for it to have landed so far away. (Trial Transcript Vol. V, R.246, PID#9298-9299).

However, there is no testimony from anyone that Tyre tossed or threw the BB gun or made any throwing motion with his body. (Trial Transcript Vol. II, R.241, PID#8579; Trial Transcript Vol. IV, R.243, PID#9061; Trial Transcript Vol. V, R.246, PID#9340). After the shooting, Mason admits that he rolled Tyre to his side to "check[] for the gun." (Trial Transcript Vol. IV, R.243, PID#9036). A jury could reasonably infer, based on the impossibility of the gun landing where it did without some force put upon it, the lack of evidence that Tyre was the source of that force, and Mason going to Tyre to look for the BB gun, that Mason found the BB gun on Tyre's body and tossed it. Reffitt also saw Mason at Tyre's body looking for the gun. (Trial Transcript Vol. V, R.246, PID#9347).

The investigation into Mason's use of force could have shed light on this possibility. During the investigation, Tyre's BB gun was swabbed for DNA. There was DNA for two unidentified males. (Trial Transcript Vol. IV, R.243, PID#9072-9073). However, Mason was not asked to provide a sample, so his DNA was never compared to the samples found on the BB gun. (*Id*.). As a result, it remains unknown if Mason's DNA was on the BB gun.

This is admissible evidence regarding the physical evidence found on the scene, and the jury should have been allowed to hear it and draw permissible inferences from it. The undisputed evidence adduced at trial shows that Tyre did not throw the BB gun or make any throwing motion. If it was not Tyre, it must have been someone else. A jury could infer that Mason found the BB gun and threw it. The evidence regarding DNA collection tells the jury that the evidence does not exclude this possibility. This evidence calls Mason's credibility into question and for these reasons, the jury should have been allowed to hear this evidence.

This error was not harmless. The lower court excluded relevant admissible evidence, that the jury more probably than not would have relied upon to infer that Mason tossed the BB gun. For this reason, a new trial was warranted and the District Court erred in denying Plaintiff's Motion.

     **v.** ***Evidence of Facts Not Known to Mason is Irrelevant and Inadmissible and Admitting this Evidence Prejudiced Plaintiff***

Finally, the District Court erroneously admitted the testimony of Michael Ames. Ames' testimony was exclusively evidence of facts not known to Mason at the time, and thus irrelevant to the analysis of whether his use of deadly force was reasonable. *Dickerson*, 101 F.3d at 1155 fn. 3. Such evidence is also irrelevant to the state law claim. *See Anderson,* 134 Ohio St.3d 380, ¶ 34 (defining recklessness as characterized by disregard of or indifference to a known or obvious risk). Despite

this, the lower court permitted him to testify regarding the robbery. This was erroneous and it was probable that it materially affected the verdict, and for that reason, Plaintiff was entitled to a new trial and the District Court erred in denying Plaintiff's Motion.

## III.   THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO CITY OF COLUMBUS.

To establish municipal liability under 42 U.S.C. § 1983 and *Monell v. Dept. of Social Serv.*, 436 U.S. 658 (1978), Plaintiff must show that City of Columbus' policy, custom, or procedure was the moving force behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378 (1989).

There are four general methods of proving a municipality's illegal policy or custom: the plaintiff may prove "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir.2019), citing *Burgess*, 735 F.3d at 478. The first two methods of demonstrating municipal liability are based on city policy itself being unconstitutional. The latter two are based on a failure to act that is deliberately indifferent to the rights of persons who come into contact with City of Columbus police officers. *See North v. Cuyahoga County*, 754 F.App'x 380, 384 fn. 2 (6th Cir.2018), citing *Garner v. Memphis Police*

*Dep't*, 8 F.3d 358, 365-366 (6th Cir.1993). Here, Plaintiff presented evidence upon which a jury could rely to find that all four methods of imposing municipal liability apply. For this reason, the District Court erred in granting the City summary judgment.

### A. Standard of Review.

Appellate courts review a district court's grant of summary judgment *de novo*, applying the same summary judgment standard as the district court. *Sigley v. City of Parma Heights*, 437 F.3d 527, 532 (6th Cir.2006). Summary judgment is appropriate when the evidence, "taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Hartman v. Great Seneca Fin. Corp.,* 569 F.3d 606, 611 (6th Cir.2009). *See* Fed. R. Civ. P. 56(a).

In this case, there were significant and genuine disputes of material fact regarding Plaintiff's *Monell* claims against Defendant City, and the District Court erred in granting summary judgment.

### B. Plaintiff Demonstrated a Genuine Dispute of Fact Regarding Whether the Official Policies and Practices of Defendant City Caused the Violation of Plaintiff's Rights.

"[T]o satisfy the *Monell* requirements a plaintiff must identify the policy, connect the policy to the city itself, and show that the particular injury was incurred because of the execution of that policy." *Jackson*, 925 F.3d at 829 (internal quotation

omitted). However, "a city may be liable under *Monell* for a policy of permitting constitutional violations regardless of whether the policy is written." *Id.* at 830. "[C]ustoms, in contrast to official policies, do not receive 'formal approval,'" and instead are "'persistent and widespread . . . practices of . . . officials.'" *Monell*, 436 U.S. at 690-691; *Paige v. Coyner*, 614 F.3d 273, 284 (6th Cir.2010). "Congress included customs and usages" in 1983 because "[a]lthough not authorized by written law, such practices ... could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691, quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970).

The facts presented by Plaintiff demonstrate that while City of Columbus had written policies that appear to be consistent with the requirements of the Constitution, the actual customs and usages of the City of Columbus police department are inconsistent with the requirements of the Constitution and cause and permit its police officers to use excessive force. This is because it is the policy of City of Columbus that police officers are permitted to use deadly force if they experience subjective fear and if they are confronted with a speculative, instead of an imminent, threat. This is contrary to the Constitution and results in police officers, including Mason, using deadly force when there is no objectively reasonable basis that an immediate threat of harm to the officer or to another person exists.

Defendant City had a policy that a threat did not actually need to be "imminent" or "immediate" to justify the use of deadly force by City of Columbus police officers but can be merely "speculative." (Pilya 30(b)(6) Dep., R.141-1, PID#3290). City of Columbus policy also permits the use of deadly force so long as an officer can "articulate" the threat they "believed" to exist. (*Id*., PID#3311-3312). This does not comply with the Constitution because the use of force must be objectively reasonable and an officer's subjective motivations have "no bearing" on whether the use of force is reasonable. *Graham*, 490 U.S. at 397-398. If officers base the decision to use force on their subjective fear, they will inevitably use force in circumstances where it was not objectively reasonable.

A jury could also find that Defendant City had a policy that permitted officers to shoot when a suspect has their hand on a weapon or when they merely reach in the direction of a weapon. Officers are trained to respond to the future "threat" not the "actual action," purportedly because of the risk that an officer would respond too slowly if they waited for the threat to materialize. (Shaw 30(b)(6) Dep., R.141-2, PID#3515; Defensive Tactics Unit 2009 Training, R.141-10, PID#4165). This includes shooting before a suspect even pulls a gun out of their waistband. (*Id*.). A suspect having their hand on a gun (even though Ohio is an open-carry state) is enough to justify using deadly force. (*Id*.). This is also contrary to the Constitution, because reaching for or holding a weapon, on its own, does not justify the use of

deadly force and does not demonstrate a sufficiently imminent threat. *Lemmon*, 768 F.App'x at 418 If officers follow this policy, they will inevitably use force in circumstances where it was not objectively reasonable.

Here, Mason used deadly force despite the fact that any threat Tyre King posed was speculative. He shot in the absence of an objectively reasonable basis, based on his own subjective fear, and based on the policy of the City, which demonstrated to him that such a use of force would be permissible. Because Mason acted in accordance with, and as a result of, City of Columbus' use of force policy when he used excessive force against Tyre, the City of Columbus is liable for that unconstitutional use of force, and the District Court erred in granting summary judgment.

### C. Plaintiff Demonstrated a Genuine Dispute of Fact Regarding Whether Defendant City Ratified Mason's Prior Uses of Excessive Force and Caused the Violation of Plaintiff's Rights.

In *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988), the court explained how a decision by the final policy maker reviewing a single incident of alleged misconduct can bind a municipality: When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for

conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final. *Id*. at 127.

In other words, when the final municipal policymaker reviews the employee's discretionary actions, he measures those actions against the municipality's official policies. If he approves the employee's actions and does not discipline or reprimand the employee, his approval is final and demonstrates that the employee followed official policy. In a ratification case, therefore, the municipality's liability is not based on the policymaker's *ex post facto* approval of the employee's actions. Rather, it is based on the municipality's own policy, which the employee followed in carrying out his actions. The official's ratification confirms that the employee was acting according to official policy as it existed at the time.

As described in Section III(B), City of Columbus' use of force policy is constitutionally deficient and it permits and caused the constitutional violation at issue here. The City then ratified Mason's use of force, finding that he did not violate City of Columbus policy when he shot Tyre King. (Kuebler 30(b)(6) Dep., R.141-3, PID#3732). This ratification of Mason's use of force is evidence that he acted in compliance with, and as a result of, City of Columbus policy when he shot Tyre King. The Critical Incident Response Team ("CIRT") investigation and the Firearms Review Board ("FRB") investigations approved Mason's use of deadly force against

Tyre: they measured Mason's acts against the City's policies and found his actions in compliance with City policy. That approval demonstrated Defendant City's policy of using deadly force where there is no imminent threat of harm and demonstrated Mason's compliance with that policy. That ratification is "chargeable to the municipality." *Praprotnik*, 485 U.S. at 127.

However, this *ex post facto* approval of Mason's conduct is not the only evidence of ratification here. Rather, there is also evidence that supports that the ratification of Mason's *prior* uses of force, including an unjustified and unreasonable use of deadly force, in a similar situation to the one Mason confronted in this case, conveyed to Mason that the City of Columbus use of force policy permitted deadly force even where there was no imminent threat. Mason's use of deadly force against Tyre King is the direct result of that ratification.

Every use of force by Mason has been found to be justified and in policy by Defendant City. (Summary of Mason Citizen Complaints and Internal Investigations, R.141-11, PID#4269-4346). Prior to shooting Tyre King, Mason shot Gary Williams, who—similar to the facts here—had a weapon but demonstrated no intent to use it, did not threaten anyone with it, and never pointed it at anyone. (Police Involved Death Review Re: Gary Williams, R.141-14, PID#4575-4576). Despite the lack of an immediate threat of harm to Mason or another person, Mason shot Williams. (*Id*.). And most importantly, his use of force was investigated by

Defendant City, that investigation revealed that Williams never aimed his weapon at anyone, and the City of Columbus told Mason that his actions were justified and consistent with City policy. (*Id.*, PID#4567).

The obvious and foreseeable result of that prior ratification is that Mason would continue to use the level of force that the City approved, in circumstances like those approved of by the City. And that is exactly what he did when he shot Tyre despite the fact that Tyre never threatened to use his weapon and never presented any indication that he was willing to and was about to use the weapon.

The District Court erred for two reasons. First, the court conflated municipal liability based on ratification with liability where the final decisionmaker ordered their subordinate to act, finding that the policy could not have caused the violation unless there was "evidence to suggest that the City would have viewed Mason as disobeying orders if he had not fired." (Opinion and Order, R.150, PID#4861). In doing so, the court misread *Praprotnik*. While *Praprotnik* spoke of decisions "constrained by policies," the Court did not require that the official be constrained to only one option. 485 U.S. at 127. Rather, the Court expressly contemplated that the official would have some discretion in their decision-making. *Id*. It is the *scope* of that discretion that is determined by municipal policy. Here, Mason's decision to use force *was* constrained by City policy – he did not have complete discretion, but rather the City had policies as to when force and deadly force were and were not

permissible. (Use of Force Directive, R.136-27, PID#2962-2971). And based on those constraints, the City has found other uses of deadly force to be in violation of its policy. (Kuebler 30(b)(6) Dep., R.141-3, PID#3691-3721). Mason's actions, on the other hand, were reviewed by the City and the City found that he *did not* violate its policies. (*Id.*, PID#3732). The City of Columbus approved Mason's use of force and the basis for it, and that "ratification [is] chargeable to the municipality." *Praprotnik*, 485 U.S. at 127.

The court also erred because it failed to accept the facts in the light most favorable to Plaintiff. The court said that it was an unreasonable inference to assume that the City ratified Mason's conduct when he shot Gary Williams while believing Williams' version of the facts. The court appears to assume that if the City believed Mason's version of the facts, the shooting would have been justified and thus the City was not knowingly ratifying unconstitutional conduct. However, the critical issue with Mason's shooting of Williams, and the critical similarity with the facts of the shooting *here*, is that in both Mason *admits* that the suspect he had shot had never pointed a weapon at anyone. (Police Involved Death Review Re: Gary Williams, R.141-14, PID#4575). Thus, even believing Mason's version of the facts, the shooting was unjustified, and the City's ratification of that unjustified shooting demonstrated to Mason that such conduct was permissible. And Mason did the exact same thing here.

A jury could find the City measured Mason's actions against the municipality's official policies and found that he did not violate City policy. This demonstrates that the policy of the City permitted unconstitutional uses of force. Additionally, a jury could find that the ratification of his prior excessive uses of force was the moving force behind this use of excessive force, because the City demonstrated to Mason that such conduct was permissible. As a result, Mason's conduct is chargeable to the City, and the District Court erred in granting summary judgment to Defendant City.

### D. Plaintiff Demonstrated a Genuine Dispute of Fact Regarding Whether Defendant City's Inadequate Training and Supervision of Mason Caused the Violation of Plaintiff's Rights.

The District Court erred because it failed to accept the facts in the light most favorable to Plaintiff. Accepting the facts in the light most favorable to Plaintiff, a jury could find that the training provided by City of Columbus to Mason caused his use of excessive force. "To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist*., 455 F.3d 690, 700 (6th Cir.2006). "When determining whether a municipality has adequately trained its employees, 'the focus must be on adequacy of the training

program in relation to the tasks the particular officers must perform." *Jackson*, 925 F.3d at 834, quoting *City of Canton*, 489 U.S. at 390). The deliberate indifference prong can be met by showing that the municipality failed "to provide adequate training in light of foreseeable consequences that could result from a lack of instruction." *Ellis*, at 700-701. The deliberate indifference prong will also be met "where the city fails to act in response to repeated complaints of constitutional violations by its officers." *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir.1999).

The training provided by City of Columbus is inadequate in light of the foreseeable consequences that would result from the instruction provided. City of Columbus' training puts its citizens in danger and in fact trains its officers to violate the Constitution. The training provided by City of Columbus and received by Mason dangerously characterizes persons who break the law as "wolves" who "[f]eed on the sheep without mercy," have "a capacity for violence," "[p]ray on the weak and defenseless," and have "[n]o empathy for their fellow citizens." (Defensive Tactics Unit Training, R.141-8, PID#3992, 3994). It also makes the characterization of police officers as sheepdogs, rather than sheep themselves, dependent on their use of a firearm. If an officer "step[s] outside without that weapon, then [he] becom[es] a sheep." (*Id.*, at PID#3999). This training encourages City of Columbus police to dehumanize suspects, to assume that they are violent, and to use force against them.

However, most importantly for purposes of imposing liability against Defendant City, the City of Columbus also explicitly trains its officers to react to the "threat," not the "action." (Shaw 30(b)(6) Dep., R.141-2, PID#3515). The "threat" here is not a threat in the sense of a verbal statement of an intention to inflict harm, but in the sense of a potential risk of future harm—which is constitutionally inadequate to justify deadly force. City of Columbus explicitly trains its officers to shoot before a suspect begins to pull a gun out of their waistband and to shoot when a suspect merely has their hand on a gun. (*Id.*; Defensive Tactics Unit 2009 Training, R.141-10, PID#4165). Mason received this training. (Shaw 30(b)(6) Dep., R.141-2, PID#3515, 3557).

This training is inadequate to the tasks to be performed by police officers. It has long been established that "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons" and where "[t]he city has armed its officers with firearms, in part to allow them to accomplish this task… the need to train officers in the constitutional limitations on the use of deadly force ... can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *City of Canton*, 489 U.S. at 390, fn. 10.

Defendant City of Columbus has not trained its officers in the constitutional limitations on the use of deadly force, but on a different set of standards of its own

making, and the entirely foreseeable result is that City of Columbus police officers will follow their training and use deadly force when there is no immediate threat of harm. *Brown v. Chapman*, 814 F.3d 447, 464 (6th Cir.2016) (denying summary judgment on municipal training claim because foreseeable consequence of training officers to discharge taser at suspect's chest was that officers would discharge taser at suspects' chests). This is deliberately indifferent.

Finally, the training provided by City of Columbus to Mason was the moving force behind his violation of Tyre's constitutional rights. It is clear here that the inadequacy was closely related to or actually caused the injury. The CDP's constitutionally-deficient training instructed Mason to shoot if a suspect has a hand on a weapon or reaches towards it and that is what he did. Mason acted according to that training here, and for that reason, the City of Columbus is liable. For this reason, the District Court erred in granting summary judgment.

### E. Plaintiff Demonstrated Genuine Dispute of Fact Regarding Whether Defendant City of Columbus Maintained a Custom of Tolerance and Acquiescence to the Use of Excessive Force and Caused the Violation of Plaintiff's Rights.

The District Court erred because it failed to accept the facts in the light most favorable to Plaintiff. Accepting the facts in the light most favorable to Plaintiff, a jury could find that City of Columbus maintained a custom of tolerance and acquiescence to the use of excessive force, and that this custom caused Mason's use of deadly force against Tyre King. When a municipality has a custom of inaction to

constitutional violations, it is shown by "(1) the existence of a clear and persistent pattern of [violations under §1983] by municipal employees, (2) notice or constructive notice on the part of the City; (3) the City's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and (4) that the City's custom was the "moving force" or direct causal link in the constitutional deprivation." *Arendale v. City of Memphis*, 519 F.3d 587, 599-600 (6th Cir.2008). This same standard is used to evaluate the adequacy of investigations. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir.2005) (The plaintiffs "must show not only that the investigation was inadequate, but that the flaws in this particular investigation were representative of (1) a clear and persistent pattern of illegal activity, (2) which the [police d]epartment knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the [d]epartment's custom was the cause of the [unconstitutional activity].").

Investigations by the City of Columbus are fundamentally inadequate to respond to and discover excessive uses of force. They are designed not to discover if the officer's actions were criminal, but to find a justification for the officer's use of force. (Pilya 30(b)(6) Dep., R.141-1, PID#3182). This is apparent in the interviews and statements of the officers subject to investigation. One egregious example is from the investigation of Office Keith Abel's shooting of James England,

48

where Pilya testified about just how "painful" the interview was, describing it as "one of the most confusing statements [he] had taken." (*Id.*, PID#3337). Pilya described how he "kept going back to him and trying to get him to articulate his actions better." (*Id.*). This clearly demonstrates the real goal of the investigation— to justify the use of force, not to determine whether the use of force was criminal.

In addition, while Pilya indicated that an officer's statement would be subject to the usual methods of investigation, such as comparing the statement to the evidence to see if the facts support or dispute it, this does not occur. For example, in the investigation of Mason's shooting of Mr. Williams, prior to his shooting of Tyre King, Pilya did not attempt to reconcile the differing statements from Mason and Mr. Williams and did not use those contrary facts to challenge Mason's statement. (Police Involved Death Review Re: Gary Williams, R.141-14, PID#4578-4588).

In fact, the statement of the officer and his interview are assumed to be true and not questioned. So as long as he stated that he feared for his life, the use of force is deemed justified and there is no evaluation of whether that belief was reasonable. (Pilya 30(b)(6) Dep., R.141-1, PID#3312-3313 (officer can use deadly force in absence of immediate threat of death or bodily harm so long as he can "articulate" what he "believed")). Additionally, because no further investigation takes place, the investigation has likely not uncovered relevant facts that would be required to evaluate adequate compliance with policies. While Deputy Chief Kuebler testified

that it was possible for further investigation to be requested, he admitted that it rarely occurs. (Kuebler 30(b)(6) Dep., R.141-3, PID#3644). Ultimately, this inevitably results in a lengthy but meaningless investigation process that inevitably finds the officer's use of force justified on all levels.

The investigation here into Mason's use of force against Tyre was plagued with the same problems, and was likewise designed not to determine if Mason's actions were criminal or violated policy, but to justify his actions. The interviews of Braxton by CIRT uncovered evidence that directly contradicted Mason's statement. He insisted that Tyre never pulled the gun out and described the gun as "deep" in his pants. (Police Involved Death Review Re: Tyre King, R.141-21, PID#4693). The response to this conflict between the witness and Mason however, was not to reinterview Mason and subject his statement to any scrutiny. Instead, they gave Braxton a polygraph test in an obvious attempt to discredit evidence they didn't like. This was an unheard of step; CIRT had never before given a civilian witness a polygraph. (Pilya 30(b)(6) Dep., R.141-1, PID#3363). Tellingly, Mason's statement was never subjected to the same scrutiny. (*Id*.). While Sister Skora was interviewed by CIRT, it was not adequately comprehensive, and did not uncover that her account differed from Mason's. (Police Involved Death Review Re: Tyre King, R.141-21, PID#4686-4689). In fact, Pilya actually treated Sister Skora's account as corroborating Mason's because she saw officers chasing two people and the

placement of the officer and of Tyre was consistent with Mason's statement. (Pilya 30(b)(6) Dep., R.141-1, PID#3368). However, Skora's deposition demonstrated that she never saw a weapon in Tyre's hands and she indicated that she was in a position to have been able to see it. (Skora Dep., R.126-1, PID#1445, 1485-1486). Despite this, she never saw Tyre reach into his pants, pull on his pants or make any movements that indicated to her that Tyre was doing anything other than attempting to run. (*Id*., PID#1432, 1483-1484). Despite multiple witness accounts during the investigation that differed from Mason's in key ways, the City of Columbus never questioned Mason's story and continues to accept it as the only truthful account of what occurred that night, despite the inconsistencies.

It is also clear that these inadequate investigations are allowing a pattern of unconstitutional violations to occur and continue. While one of the deficiencies of the use of force investigations is that they do not collect sufficient evidence to uncover all possible policy violations, they *do* nonetheless collect sufficient evidence of constitutional violations for the City of Columbus to be on notice of a pattern of officers using deadly force when there is no immediate threat. Mason has used deadly force multiple times, and the investigations of those uses of force demonstrate that he used force at least twice where there was no basis for a reasonable belief that there was an immediate threat of harm that justified deadly force. (Police Involved Death Review Re: Gary Williams, R.141-14, PID#4576;

Police Involved Death Review Re: Tyre King, R.141-21, PID#4699-4705). As a result, despite their inadequacies, it is clear that they are nonetheless sufficient to put the City on notice that unconstitutional uses of force were occurring.

Despite notice of this pattern, City of Columbus failed to act. No one has ever been terminated for using excessive force. (Pilya 30(b)(6) Dep., R.141-1, PID#3375). CIRT has never found a use of force to be criminal. (*Id.*, PID# 3221). Even finding a policy violation, based on the amount of force used, is almost unheard of. The only violations ever uncovered are for purely accidental discharges and occasionally for non-level of force related violations. (Kuebler 30(b)(6) Dep., R.141-3, PID#3691-3721). Mason has never been found to have acted outside of City of Columbus policy when using force, and has never been disciplined, much less terminated. (Summary of Mason Citizen Complaints and Internal Investigations, R.141-11, PID#4269-4346). This is despite two separate investigations of deadly force that indicate that he shot without evidence of an immediate threat of harm. The failure to discipline Mason was deliberately indifferent. As a result, Mason predictably continued to use excessive force. In *Wright v. City of Euclid*, the Sixth Circuit found that the failure to *ever* meaningfully investigate excessive force complaints supported municipal liability. 962 F.3d 852, 882 (6th Cir.2020). The court specifically noted that evidence that a department never found a use of force

inappropriate supported that a dispute existed over whether the city's policy allowed excessive force to be used by its officers. *Id.*

The approval of these uses of force in the investigations by Defendant City "send[s] a message to all department officers that officers will not be held accountable when they use more force than necessary and when they violate Department policy." (Tucker Report, R.141-16, PID#4608). The City has a custom and practice of not holding officers accountable when they use more force than necessary and the policy of the City is to "ignore the law." (*Id.*, PID#4609). This pattern is evident in the "failure by CPD to meaningfully investigate and punish unjustified deadly force events." (*Id.*).

For all these reasons, the District Court erred in granting summary judgment to Defendant City of Columbus.

## CONCLUSION

For all these reasons, Plaintiff-Appellant respectfully requests that the Court reverse the District Court's order denying Plaintiff's Motion for Judgment as a Matter of Law on the claims against Mason, and that the Court reverse the District Court's order granting summary judgment to City of Columbus, and remand the case for trial against the City. In the alternative, Plaintiff respectfully requests that this Court reverse the District Court's order denying Plaintiff's Motion for a New Trial,

and that the Court reverse the District Court's order granting summary judgment to

City of Columbus, and remand the case for trial against all Defendants.

Respectfully submitted,

*/s/ M. Caroline Hyatt*
Sarah Gelsomino (0084340)
Friedman, Gilbert + Gerhardstein
50 Public Square, Suite 1900
Cleveland, OH 44113-2205
T: 216-241-1430
F: 216-621-0427
sarah@FGGfirm.com

M. Caroline Hyatt (0097269)
Friedman Gilbert + Gerhardstein
35 East 7th Street, Suite 201
Cincinnati, Ohio 45202
T: 513-572-4200
F: 216-621-0427
caroline@FGGfirm.com

*Counsel for Plaintiff-Appellant Dearrea King*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation set forth in Sixth Circuit Local Rule 32(a)(7)(B). According to the word-processing system used for the brief, it contains 12,998 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

/s/ M. Caroline Hyatt
M. Caroline Hyatt
*One of the Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2023, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ M. Caroline Hyatt
M. Caroline Hyatt
*One of the Attorneys for Plaintiff-Appellant*

Plaintiff-Appellant designates the following district court documents:

| Record Entry Number | Description of Document | PageID# Range |
|---|---|---|
| 1 | Complaint | 1-22 |
| 126-1 | Skora Dep. | 1392-1508 |
| 136 | Mason Motion | 2848-2887 |
| 136-27 | Use of Force Directive | 2962-2971 |
| 137 | City Motion | 3002-3027 |
| 141-1 | Pilya 30(b)(6) Dep. | 3144-3408 |
| 141-2 | Shaw 30(b)(6) Dep. | 3409-3581 |
| 141-3 | Kuebler 30(b)(6) Dep. | 3582-3800 |
| 141-5 | Bash 30(b)(6) Dep. | 3803-3968 |
| 141-8 | Defensive Tactics Unit Training | 3970-4081 |
| 141-10 | Defensive Tactics Unit 2009 Training | 4164-4268 |
| 141-11 | Summary of Mason Citizen Complaints and Internal Investigations | 4269-4346 |
| 141-12 | Jacobs 30(b)(6) Dep. | 4347-4543 |
| 141-14 | Police Involved Death Review Re: Gary Williams | 4548-4588 |
| 141-16 | Tucker Report | 4602-4635 |
| 141-21 | Police Involved Death Review Re: Tyre King | 4686-4716 |
| 150 | Order on Summary Judgment | 4843-4846 |
| 222 | Order re Tucker Motion in Limine | 7133-7144 |
| 223 | Order re Motion in Limine | 7145-7175 |
| 231 | Jury Instructions | 7189-7229 |
| 233 | Verdict Forms | 7234-7237 |
| 236 | Post-Trial Motion | 7243-7276 |
| 240 | Trial Transcript Vol. I | 8362-8452 |
| 241 | Trial Transcript Vol. II | 8453-8676 |
| 242 | Trial Transcript Vol. III | 8677-8891 |
| 243 | Trial Transcript Vol. IV | 8892-9145 |
| 244 | Trial Transcript Vol. VI | 9146-9257 |

| | | |
|---|---|---|
| 245 | Trial Transcript Vol. VII | 9258-9266 |
| 246 | Trial Transcript Vol. V | 9267-9482 |
| 247 | Order on Post-Trial Motion | 9483-9499 |
| 248 | Notice of Appeal | 9500-9502 |

*/s/ M. Caroline Hyatt*
M. Caroline Hyatt
*One of the Attorneys for Plaintiff-Appellant*