# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

## DEARREA KING

Plaintiff-Appellant,

v.

## CITY OF COLUMBUS, OH; BRYAN C. MASON

Defendants-Appellees.

## BRIEF OF DEFENDANTS-APPELLEES CITY OF
## COLUMBUS, OH AND BRYAN C. MASON

Westley M. Phillips
Litigation Section Chief
City of Columbus, Department of Law
Zach Klein, City Attorney
77 North Front Street, 4th Floor
Columbus, Ohio 43215
(614) 645-7385 / (614) 645-6949 (fax)
wmphillips@columbus.gov

Counsel for Defendants-Appellees City of
Columbus, Ohio and Bryan C. Mason

# CORPORATE DISCLOSURE STATEMENT

Sixth Circuit Case Number: .......................................................... 23-3818

Case Name: ....................................... Dearrea King v. City of Columbus, OH, et al.

Name of Counsel:........................................................................Westley M. Phillips

Pursuant to Fed.R.App.P.26.1, Fed.R.App.P.28(a)(1), and 6 Cir.R.26.1, Defendants-Appellees make the following disclosures:

1.  Neither the City of Columbus, Ohio nor Bryan Mason is a publicly-owned corporation or a subsidiary or affiliate of any publicly-owned corporation.
2.  No publicly-owned corporation that is not a party to this appeal has a financial interest in the outcome.

# CERTIFICATE OF SERVICE

I certify that, on December 20, 2023, I electronically filed the foregoing with the Clerk of this Court by using the Court's CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF System.

/s/ Westley M. Phillips
Westley M. Phillips
wmphillips@columbus.gov

Counsel for Defendants-Appellees City of Columbus, Ohio and Bryan C. Mason

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT.................................................... ii

CERTIFICATE OF SERVICE ................................................................. ii

TABLE OF CONTENTS ...................................................................... iii

TABLE OF AUTHORITIES ................................................................... v

STATEMENT REGARDING ORAL ARGUMENT .......................................ix

I.     JURISDICTION ........................................................................1

II.    ISSUES PRESENTED .................................................................1

III.   STATEMENT OF THE CASE .......................................................1

IV.   STATEMENT OF THE FACTS.....................................................4

V.     SUMMARY OF THE ARGUMENT ...............................................9

VI.   ARGUMENT .........................................................................10

      A.     Standard of Review ......................................................10

            1.    Motion for Judgment Notwithstanding the Verdict.............10

            2.    Denial of a New Trial ..........................................11

            3.    Summary Judgment .............................................12

            4.    Affirming For Any Other Reason.......................................12

      B.     First Assignment of Error ...........................................12

      C.     Second Assignment of Error ........................................17

            1.    The Verdict was Not Against the Clear Weight of the Evidence...........................................................18

            2.    The Jury Instructions Were Neither Erroneous Nor Prejudicial ..........................................................24

            3.    The Evidentiary Rulings Were Neither Erroneous Nor

Prejudicial .............................................................29

**D.**     **Third Assignment of Error** ........................................**40**

        1.    Official Policy or Legislative Enactment ...........................42

        2.    Policymaker Ratification ....................................................45

        3.    Failure to Train or Supervise ..............................................48

        4.    Custom of Tolerance and Acquiescence.............................50

**VII.**   **CONCLUSION** ........................................................................**51**

**CERTIFICATE OF COMPLIANCE** .................................................**x**

**CERTIFICATE OF SERVICE** ..........................................................**xi**

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS** ....... **xii**

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Beale Street Blues*, 108 F. Supp.2d 934 (W.D. Tenn. 1999) ................................................................................46

*Anderson v. Russell*, 247 F.3d 125 (4th Cir. 2001).................................15

*Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989 (6th Cir. 2012) ................................................................................11

*Barnes v. Owens-Corning, Fiberglas Corp.*, 201 F.3d 815 (6th Cir. 2000) ......................................................... 11, 18, 24

*Brown v. Shaner*, 172 F.3d 927 (6th Cir. 1999)....................................49

*Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002)..................................14

*Carter v. Buscher*, 973 F.2d 1328 (7th Cir. 1992)..................................31

*City of Canton v. Harris*, 489 U.S. 378 (1989)................................ 42, 48

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) .............................45

*Cnty. of Los Angeles v. Mendez*, 137 S. Ct. 1539, 198 L. Ed. 2d 52 (2017)...............................................................31

*Cooper v. City of Columbus, Ohio*, 2023 U.S. App. LEXIS 2629 (6th Cir.) ..................................................... 25, 26

*Cummins v. BIC USA, Inc.*, 727 F.3d 506 (6th Cir. 2013) ......................29

*Denhof v. City of Grand Rapids*, 494 F.3d 534 (6th Cir. 2007) ...............11

*Ellis v. Cleveland Mun. School. Dist.*, 455 F.3d 690 (6th Cir. 2006).............. 48, 49

*Ewolski v. City of Brunswick*, 287 F.3d 492 (6th Cir. 2002) ...................25

*Feliciano v. City of Cleveland*, 988 F.2d 649 (6th Cir. 1993) .................46

*France v. Lucas*, Case No. 1:07-cv-3519, 2012 U.S. Dist. LEXIS 151344 (N.D. Ohio Oct.22, 2012) ...................................................46

*Frerichs v. Knox County*, Case No. 3:16-cv-693, 2017 U.S. Dist. LEXIS 115564 (E.D. Tenn. July 25, 2017) .................................................46

*Garner v. Harrod*, 656 Fed.App'x. 755 (6th Cir. 2016) ..........................41

*Goodwin v. Richland Cty.*, 832 Fed. Appx. 354 (6th Cir. 2020) .......... 16, 18, 30, 31

*Graham v. Connor*, 490 U.S. 386 (1989) ......................................... 13, 14

*Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595 (6th Cir. 2001) .................................................................................10

*Hayes v. Columbus*, 2014-Ohio-2076, 2014 WL 2048176 ......................31

*Hicks v. Scott*, 958 F.3d 421 (6th Cir. 2020) ..........................................17

*Holmes v. City of Massillon, Ohio*, 78 F.3d 1041 (6th Cir. 1996) ...........11

*Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019) ............ 42, 43

*Jordan v. Howard*, 2d Dist. Montgomery No. 29190, 2021-Ohio-4025 ......... 26, 27

*Kendzierski v. Carney*, 2005-Ohio-6735 (Ct. App.) ...............................31

*Lemmon v. City of Akron*, 768 Fed. Appx. 410 (6th Cir. 2019) ..............16

*Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397 (6th Cir. 2007) ........... 13, 31

*Logan v. Dayton Hudson Corp.*, 865 F.2d 789 (6th Cir. 1989) ...............11

*Los Angeles v. Heller*, 475 U.S. 796 (1986) ..........................................41

*Miller v. Maddox*, 866 F.3d 386 (6th Cir. 2017) ...................................12

*Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978) ..................................................................................1

*Mosby-Meachem v. Memphis Light, Gas & Water Division*, 883 F.3d 595 (6th Cir. 2018) ............................................................11

*Mullins v. Cyranek*, 805 F.3d 760 (6th Cir. 2015) .................................14

*Noble v. Brinker Intern., Inc.*, 391 F.3d 715 (6th Cir. 2004) ..................10

*Old Chief v. United States*, 519 U.S. 172 (1997) ...................................40

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ...................................... 43, 45

*Phillips v. Stevens*, Case No. 2:04-cv-207, 2007 U.S. Dist. LEXIS
    60215 (S.D. Ohio Aug.16, 2007)................................................................46

*Pollard v. City of Columbus*, 780 F.3d 395 (6th Cir. 2015) ...................... 16, 25, 28

*Robertson v. Lucas*, 753 F.3d 606 (6th Cir. 2014)................................................41

*Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992)....................................................14

*Smith v. Leggett Wire Co.*, 220 F.3d 752 (6th Cir. 2000)......................................10

*Stein v. Regions Morgan Keegan*, 821 F.3d 780 (6th Cir. 2016) ...........................12

*Stillwagon v. City of Del.*, 175 F. Supp. 3d 874 (S.D. Ohio 2016)........................46

*Szekeres v. CSX Transp., Inc.*, 731 F.3d 592 (6th Cir. 2013) ................................11

*Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005) ..............................50

*Thomas v. City of Columbus, Ohio*, 854 F.3d 361 (6th Cir. 2017)....... 12, 13, 14, 16

*Thornton v. City of Columbus*, 727 F. App'x 829 (6th Cir. 2018) ............. 13, 14, 16

*Tomazic v. Cleveland*, Case No. 1:04-cv-2252, 2006 U.S. Dist. LEXIS
    65682 (N.D. Ohio Sept. 14, 2006)...............................................................46

*United States v. L.E. Cooke Co.*, 991 F.2d 336 (6th Cir. 1993) .............................18

*Wehr v. Ryan's Family Steak Houses, Inc.*, 49 F.3d 1160 (6th Cir.
    1991) ..............................................................................................................11

*Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991) .............................................46

*Wilson v. Gregory*, 3 F.4th 844 (6th Cir. 2021)...............................................27, 28

*Woodbridge v. Dahlberg*, 954 F.2d 1231 (6th Cir. 1992) ................................18, 24

## STATUTES

42 U.S.C. § 1983 ......................................................................1, 41

O.R.C. § 2125.01 ......................................................................1

O.R.C. § 2744.03 ......................................................................28

## RULES

6 Cir. R. 26.1 ...................................................................... ii

6 Cir. R. 28 ...................................................................... ix, x

6 Cir. R. 32 ......................................................................x

Fed. R. App. P. 26.1 ...................................................................... ii

Fed. R. App. P. 28 ...................................................................... ii, x

Fed. R. App. P. 28.1 ......................................................................x

Fed. R. App. P. 32 ......................................................................x

Fed. R. App. P. 34 ...................................................................... ix

Fed. R. Evid. 404 ......................................................................33

**STATEMENT REGARDING ORAL ARGUMENT**

Pursuant to Fed.R.App.P.34(a) and 6 Cir.R.28 (b)(1)(B), Defendants-Appellees state that oral argument is not necessary in this matter. The facts and legal arguments are adequately presented in the briefing, and oral argument would not significantly aid either the record or the Court's decision-making process.

# I.     JURISDICTION

Defendants-Appellees are satisfied with Plaintiff-Appellant's jurisdictional statement.

# II.    ISSUES PRESENTED

1.     Did the District Court erroneously deny Plaintiff-Appellant's motion for judgment as a matter of law?

2.     Did the District Court abuse its discretion in denying Plaintiff-Appellant's motion for a new trial?

3.     Did the District Court erroneously grant summary judgment to the City of Columbus?

# III.   STATEMENT OF THE CASE

This civil action arises out of the September 14, 2016 police-involved shooting of Tyre King ("King"). *See* COMPLAINT ¶1 (R.1, Page ID #2). On September 14, 2018, the administrator of King's estate, Plaintiff-Appellant Dearrea King ("Plaintiff-Appellant"), filed a complaint against Defendants-Appellees Bryan Mason ("Mason") and the City of Columbus ("the City"). *See id*. Plaintiff-Appellant brought four federal claims under 42 U.S.C. § 1983: an excessive force claim, a deliberate indifference claim, an equal protection claim, and a municipal liability claim under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). Plaintiff-Appellant also brought an Ohio state-law wrongful death claim against Mason under Ohio Revised Code § 2125.01.

Mason filed a motion for summary judgment on all claims asserted against him. MASON MSJ (R.136, Page ID #2848-2887). Plaintiff-Appellant filed an opposition. OPP'N (R.141, Page ID #3090-3143). Mason filed a reply. MASON REPLY (R.145, Page ID #4790-4805). On August 3, 2021, the District Court denied summary judgment to Mason on the Fourth Amendment excessive-force claim, the Fourteenth Amendment Equal Protection claim, and the Ohio state-law wrongful death claim. MSJ OPINION AND ORDER (R.150, Page ID #4843-4865). Mason filed an interlocutory appeal. MASON NOTICE OF APPEAL (R.152, Page ID #4867-68). On July 19, 2022, this Court dismissed Mason's appeal for a lack of jurisdiction, finding that his arguments sprung from underlying factual disputes. OPINION DISMISSING APPEAL (R.160, Page ID #4894-4904).

The City also filed a motion for summary judgment on all claims asserted against it. CITY MSJ (R.137, Page ID #3002-27). Plaintiff-Appellant filed an opposition. OPP'N (R.141, Page ID #3129-42). The City filed a reply. CITY REPLY (R.146, Page ID #4806-4814). On August 3, 2021, the District Court granted summary judgment to the City, finding that Plaintiff-Appellant "cannot establish that Mason acted pursuant to municipal custom or policy as is required to impose liability upon a municipality for a constitutional violation." MSJ OPINION AND ORDER (R.150, Page ID #4843-4865).

Beginning on January 17, 2023, the District Court held trial on Plaintiff-Appellant's remaining claims. JANUARY 17, 2023 TRIAL TRANSCRIPT (R.240, Page ID #8362). Before the jury was given its charge, Plaintiff-Appellant voluntarily dismissed her Equal Protection claim and chose to proceed only on a recklessness theory for her state-law claim. JANUARY 20 TRIAL TRANSCRIPT (R.243, Page ID #8897); JANUARY 23 TRIAL TRANSCRIPT (R.246, Page ID #9450). Plaintiff-Appellant also made an oral motion pursuant to Fed. R. Civ. P. 50(a)(1), requesting judgment in her favor as a matter of law. JANUARY 23 TRIAL TRANSCRIPT (R.246, Page ID #9446). The District Court denied her motion. *Id.* (R.246, Page ID #9446-47).

The jury returned a verdict for Mason, finding that he did not violate King's constitutional right to be free from excessive force, and that he did not act recklessly and batter King. JANUARY 25 TRIAL TRANSCRIPT (R.245, Page ID #9260-62); VERDICT (R.233, Page ID #7234-37). Within 28 days of the jury verdict, Plaintiff-Appellant filed a Motion for Judgment Notwithstanding the Verdict or in the Alternative, Motion for a New Trial on February 22, 2023. POST-TRIAL MOTION (R.236, Page ID #7243-76). Mason filed an opposition. OPP'N (R.237, Page ID #8315-45). Plaintiff-Appellant filed a reply. REPLY (R.239, Page ID #8349-61). The District Court denied Plaintiff-Appellant's motion on September 19, 2023. OPINION & ORDER (R.247, Page ID #9483-99). Plaintiff-Appellant is now appealing that deci-

sion. Plaintiff-Appellant is also appealing the District Court's August 3, 2021 decision granting summary judgment to the City.

## IV.    STATEMENT OF THE FACTS

On September 14, 2016, Mason and Robert Reffitt were working as partners, in a clearly identifiable marked Columbus police cruiser, and wearing uniforms that clearly identified them as Columbus Police officers. JANUARY 20, 2023 TRIAL TRANSCRIPT (R.243, Page ID #8975, 8977-78). Shortly after 7:40 p.m., they responded to a dispatched call of an armed robbery occurring in the area of 18th Street and East Broad Street during which the suspect pointed a handgun at the victim. *Id*. (R.243, Page ID #8980-81). As Mason and Reffitt drove to the scene, Mason received real time descriptions of the suspects and their location. *Id*. (R.243, Page ID #8981-86). Mason heard that the suspect was a male black in a group of multiple people running eastbound from the location of the robbery. *Id*. (R.243, Page ID #8985-86).

As Mason and Reffitt approached the vicinity of the robbery, Reffitt turned southbound on Hoffman Avenue, which is slightly east of South 18th Street. *Id*. (R.243, Page ID #8992). Almost immediately after making the turn onto Hoffman Avenue, Mason saw two officers exit a northbound cruiser and run directly westbound between some houses. *Id*. (R.243, Page ID #8992-96). Those officers were chasing Demetrius Braxton and King. JANUARY 19, 2023 TRIAL TRANSCRIPT (R.242,

Page ID #8813). Based upon the totality of the circumstances, Mason believed that the officers from the other cruiser were pursuing the robbery suspects. TRIAL TRANSCRIPT, JANUARY 20, 2023 (R.243, Page ID #8993). According to Mason, "the amount of cruisers in the area, the time that it took us to respond, it would have put the robbery suspects right in that area." *Id*. (R.243, Page ID #8992-93).

Mason's belief that Braxton and King were the robbery suspects was both reasonable and correct. Braxton had robbed Michael Ames with a gun that was provided by King. JANUARY 19, 2023 TRIAL TRANSCRIPT (R.242, Page ID #8810-11). After robbing Ames, Braxton handed the gun back to King. *Id.* (R.242, Page ID #8811-12). King then put the gun back into his waistband. *Id.* (R.242, Page ID #8812-13). The gun was a BB gun. *Id.* (R.242, Page ID #8791-92). However, Mason did not, and had no reasons to, know this at the time of the shooting as it is undisputed that the gun looks like a real firearm. JANUARY 20, 2023 TRIAL TRANSCRIPT (R.243, Page ID #8920-21, 8928-29, 9012).

Reffitt stopped his and Mason's cruiser just south of East Capital Street, which is an alley that runs parallel to, and is directly south of, East Broad Street. JANUARY 20, 2023 TRIAL TRANSCRIPT (R.243, Page ID #8994-96). Mason quickly exited the cruiser and ran westbound on East Capital Street thinking that he might be able to stop the suspects if they turned north and away from the other officers. *Id*. Having

knowledge that the suspects were wanted for an armed robbery committed at gunpoint, Mason drew his firearm as he ran westbound in the alley. *Id*. (R.243, Page ID #8996). Mason approached South 19th Street, looked southbound, and immediately observed Braxton and King running northbound on South 19th Street towards his direction. *Id*. (R.243, Page ID #8997-98).

Mason correctly believed that Braxton and King were the robbery suspects fleeing from the other officers. JANUARY 19, 2023 TRIAL TRANSCRIPT (R.242, Page ID #8834-36); JANUARY 20, 2023 TRIAL TRANSCRIPT (R.243, Page ID #8997-98). Because Mason knew that a firearm had been used in the commission of the robbery, Mason focused his gun on Braxton and King and began giving loud verbal commands to get down. JANUARY 20, 2023 TRIAL TRANSCRIPT (R.243, Page ID #8997-98). Almost immediately after Mason shouted those commands, Braxton went down onto his stomach near the middle of South 19th Street, with his hands out to his sides. *Id*. (R.243, Page ID #8998-99). King, however, did not obey Mason's commands. *Id*. (R.243, Page ID #8999).

When Mason shifted his focus to King, Mason could see the handgun that was tucked into King's waistband. *Id*. As Mason shouted extra commands to "get down, get down, get down," King continued running northeast toward a car that was parked, facing south, in a small parking area located on the southeast corner of East Capital Street and South 19th Street. *Id*. (R.243, Page ID #8999-9001). King then

came to a stop with a quick stutter step in front of the car on the driver's side. *Id.* (R.243, Page ID #8999-9001, 9051-52). Mason kept giving loud verbal commands for King to "get down, get down, get down," to which King did not comply. *Id.* (R.243, Page ID #9001).

King then reached down and grabbed the grip of the gun that was in his waistband and began tugging forcefully on the gun, three or more times, like it was stuck on a belt or a drawstring. *Id.* Mason continued to give commands for King to "get down, get down, get down," until King's gun cleared his waistband and came up in front of his torso. *Id.* Mason, defending himself, believing that King was drawing his gun to shoot him, fired three shots at King in rapid succession, with all three shots occurring in a total of one to two seconds. *Id.* (R.243, Page ID #9001-02, 9005-06, 9060-61). Mason shot at King's front left side, with King canted away from Mason, turned slightly to the right. *Id.* (R.243, Page ID #9063-64, 9075-76). King was not running when he was shot. JANUARY 18, 2023 TRIAL TRANSCRIPT (R.241, Page ID #8465-67); SKORA DEPOSITION DESIGNATION, p. 93 (R.190-1); JANUARY 23, 2023 TRIAL TRANSCRIPT (R.246, Page ID #9325). Only 5-8 seconds separated the moment Mason first saw Braxton and King running toward him in the alley from the instant he fired his gun. JANUARY 20, 2023 TRIAL TRANSCRIPT (R.243, Page ID #9006).

Upon being shot, King dropped his gun and fell to the ground. JANUARY 23,

2023 TRIAL TRANSCRIPT (R.246, Page ID #9326). King's gun hit the parking block in front of the parked car and landed in front of the car's driver's side front tire. *Id.* Reffitt immediately aired for a medic for King. *Id.* (R.246, Page ID #9326-27). Despite Plaintiff-Appellant's allegation to the contrary, Mason did not say any racial slur or make any racist statement.[1] JANUARY 20, 2023 TRIAL TRANSCRIPT (R.243, Page ID #9012-13); JANUARY 23, 2023 TRIAL TRANSCRIPT (R.246, Page ID #9329-30). Nor did Mason call King or Braxton dumb or stupid. JANUARY 20, 2023 TRIAL TRANSCRIPT (R.243, Page ID #9013); JANUARY 23, 2023 TRIAL TRANSCRIPT (R.246, Page ID #9329). After the shooting, Mason learned that King's gun was a BB gun. JANUARY 20, 2023 TRIAL TRANSCRIPT (R.243, Page ID #9012). Mason would not have fired if he knew that King's gun was a BB gun. *Id.*

When asked to assume that Mason accurately described everything that occurred during the incident (*Id.* (R.243, Page ID #8929-30)), Plaintiff-Appellant's

---

[1] The false allegation that Mason stated a racial slur after the shooting was made by Braxton only after he realized that he left his identification at the scene of the robbery and at a time he was threatening to kill witnesses and telling them to lie about what had happened. JANUARY 19, 2023 TRIAL TRANSCRIPT (R.242, Page ID #8837-38; 8857-60). Mason specifically testified, "It's disturbing to even be accused of that. I have biracial family members, and it's offensive if anyone was to ever use that, and I would not tolerate that. I did not say that." JANUARY 20, 2023 TRIAL TRANSCRIPT (R.243, Page ID #9013). Notably, after Braxton's cross-examination, and before the jury was given its charge, Plaintiff-Appellant voluntarily dismissed her Equal Protection claim. JANUARY 20 TRIAL TRANSCRIPT (R.243, Page ID #8897). Plaintiff-Appellant is now inviting this Court to disregard the testimony of Mason and Reffitt and to construe Braxton's contradicted and blatantly false allegation as being true.

policing expert Melvin Tucker confirmed the following:

1. Mason was responding to a serious violent crime. *Id*. (R.243, Page ID #8932-33).

2. Mason saw King attempt to evade arrest by flight. *Id*. (R.243, Page ID #8934).

3. King resisted arrest. *Id*. (R.243, Page ID #8934-35).

4. King ignored multiple commands issued at gunpoint to get down on the ground. *Id*. (R.243, Page ID #8935).

5. It was reasonable to think that King's gun was a real firearm because it looks like a gun. *Id*. (R.243, Page ID #8928-29).

6. Handguns are deadly. *Id*. (R.243, Page ID #8936).

7. An armed suspect can pull a handgun from his waistband, aim, and shoot in as little as two-tenths of a second. *Id*. (R.243, Page ID #8940).

8. King's age was not relevant to the threat he posed. *Id*. (R.243, Page ID #8940-41).

9. This was a tense, uncertain, and rapidly evolving situation. *Id*. (R.243, Page ID #8935).

## V.    SUMMARY OF THE ARGUMENT

The District Court correctly denied Plaintiff-Appellant's motion for judgment as a matter of law because, accepting all facts in the light most favorable to Mason and drawing all reasonable inferences in Mason's favor, a reasonable jury would have a legally sufficient evidentiary basis to find for Mason on both the Fourth Amendment excessive force claim and the state-law wrongful death claim.

The District Court did not abuse its discretion in denying Plaintiff-Appellant's motion for a new trial because the verdict in this case was not against the manifest weight of the evidence, and neither the jury instructions nor the evidentiary rulings were erroneous or prejudicial.

The District Court correctly granted summary judgment to the City because the jury found that no constitutional violation occurred and Plaintiff-Appellant also cannot establish that some policy or custom of the City led to a constitutional violation.

## VI.   ARGUMENT

### A. STANDARD OF REVIEW

#### 1.  Motion for Judgment Notwithstanding the Verdict

An appellate court reviews a district court's denial of a Rule 50(b) motion *de novo*. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000). A court may grant a party's renewed Rule 50(b) motion "only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Noble v. Brinker Intern., Inc.*, 391 F.3d 715, 720 (6th Cir. 2004) (quoting *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001)). When making its decision, a court may "not weigh the evidence, evaluate the credibility of the witnesses, or substitute [its] judgment for that of the jury." *Mosby-Meachem v. Memphis Light, Gas & Water Division*, 883 F.3d 595, 602 (6th

Cir. 2018) (quoting *Wehr v. Ryan's Family Steak Houses, Inc.*, 49 F.3d 1160, 1152 (6th Cir. 1991)). An appellate court will reverse the denial of a motion for JNOV only if "reasonable minds could not come to a conclusion other than one favoring the movant." *Szekeres v. CSX Transp., Inc.*, 731 F.3d 592, 597 (6th Cir. 2013) (citation omitted).

## 2. Denial of a New Trial

An appellate court reviews a district court's denial of a new trial under the abuse-of-discretion standard, reversing only if it has a "definite and firm conviction that the trial court committed a clear error of judgment." *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820 (6th Cir. 2000) (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989)). Courts "uphold the verdict if it was one which the jury reasonably could have reached; we cannot set it aside simply because we think another result is more justified." *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012) (citing *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007)). "'[A] new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias.'" *Mosby-Meachem*, 883 F.3d at 606 (quoting *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045 (6th Cir. 1996)).

### 3. Summary Judgment

An appellate court reviews a grant of summary judgment *de novo*. *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017).

### 4. Affirming For Any Other Reason

This Court "may affirm a decision of the district court for any reason supported by the record, including on grounds different from those on which the district court relied." *Stein v. Regions Morgan Keegan*, 821 F.3d 780, 786 (6th Cir. 2016); *Thomas v. Columbus*, 854 F.3d 361, 364-65 (6th Cir. 2017).

## B.    FIRST ASSIGNMENT OF ERROR

For her first assignment of error, Plaintiff-Appellant argues that the District Court erred by denying her motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b). PLAINTIFF-APPELLANT'S BRIEF (App. R.13, Page ID #19-25). For the following reasons, the first assignment of error lacks merit and must be overruled.

Accepting all facts in the light most favorable to Mason and drawing all reasonable inferences in Mason's favor, a reasonable jury would have a legally sufficient evidentiary basis to find for Mason on both the Fourth Amendment excessive force claim and the state-law wrongful death claim. The Sixth Circuit employs "an objective-reasonableness test to determine whether an officer has used excessive force in violation of the Fourth Amendment, asking 'whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them,

without regard to their underlying intent or motivation.'" *Thornton v. City of Columbus*, 727 F. App'x 829, 836 (6th Cir. 2018) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). The "trial court must perform a 'careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id*. (quoting *Graham*, 490 U.S. at 396.) The balancing test requires courts to pay "careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by fight." *Graham*, 490 U.S., at 396.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. In other words, courts "consider the officer's reasonableness under the circumstances he faced at the time he decided to use force." *Thomas*, 854 F.3d at 365 (citing *Livermore v. Lubelan*, 476 F.3d 397, 406 (6th Cir. 2007). Courts apply this approach because "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396-97. "In making this judgment, we must be careful not to substitute 'our personal notions of proper police procedure for the instantaneous decision of the officer at the scene.'" *Mullins*

*v. Cyranek*, 805 F.3d 760, 766 (6th Cir. 2015) (quoting *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992). "Instead, this court must adopt a 'built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case.'" *Thornton*, 727 F. App'x at 836 (quoting *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002)). The Sixth Circuit has made clear that this test is fact specific. Relevant to this case, the Sixth Circuit "has recently rejected a 'categorical rule that force can only be reasonable if a suspect raises his gun.'" *Thornton*, 727 F. App'x at 838  (quoting *Thomas*, 854 F.3d 361).

Given this prior precedent, and the facts presented at trial, the District Court properly denied Plaintiff-Appellant's motion for judgment as a matter of law as the jury heard sufficient evidence to conclude that Mason's shooting was reasonable. The jury heard that King had drawn his weapon, which had cleared his waistband and came up in front of his torso. This weapon was a BB gun. However, Mason did not, and had no reasons to, know this at the time of the shooting. As courts must perform their analysis "from the perspective of a reasonable officer on the scene" the Court must treat the weapon as if it were real. *Graham*, 490 U.S. at 396.

The surrounding events, when examined in the light most favorable to Mason, support the conclusion that Mason acted reasonably. Mason was responding to an armed robbery, during which the suspect pointed a gun at the victim. Mason had

received real time descriptions of the suspects and their location as he arrived at the scene and he reasonably and correctly believed that Braxton and King were the robbery suspects fleeing from the other officers. Given these facts, the jury could conclude that Mason was responding to an extremely severe crime, and that he knew Braxton and King were the armed suspects. The jury could have also reasonably concluded that King was actively resisting arrest and that he posed an immediate threat to Mason. Mason ordered King and Braxton to "get down," but that King didn't comply. Instead of complying, Mason observed King grabbing the firearm that was in his waistband and begin tugging on the firearm multiple times. King then pulled the gun from his waistband and raised it in front of his torso. Given these facts and considering the mere seconds in which this interaction took place, the *Graham* balancing test supports the conclusion that deadly force was used reasonably.

Plaintiff-Appellant's arguments do not change this result. The District Court correctly determined that "While the jury did not hear that Tyre King pointed a gun at Officer Mason, such an action is not always required before an officer can respond with deadly force." OPINION & ORDER (R.247, Page ID #9489). The Sixth Circuit has been clear that deadly force can be reasonable even if the suspect does not point a firearm at the officer. *Thornton*, 727 F. App'x at 838; *See also Anderson v. Russell*, 247 F.3d 125, 131 (4th Cir. 2001) ("[A]n officer does not have to wait until a gun is pointed at the officer before the officer is entitled to take action.") A suspect does

not even have to raise the firearm. *See, e.g., Thomas*, 854 F.3d at 366-67 (holding that an officer reasonably used deadly force when an individual ran at him with a firearm at his side); *Thornton*, 727 F. App'x at 837 (holding that an officer's use of deadly force was reasonable when a suspect had a shotgun not pointed at the officers). A suspect does not even have to be armed. *See, e.g., Pollard v. City of Columbus*, 780 F.3d 395 (6th Cir. 2015); *Lemmon v. City of Akron*, 768 Fed. Appx. 410 (6th Cir. 2019); *Goodwin v. Richland Cty.*, 832 Fed. Appx. 354 (6th Cir. 2020).

Plaintiff-Appellant's argument that "there is no evidence whatsoever in the record that a jury could rely on to find that Tyre King gave an indication that he was willing and about to use the BB gun to harm someone," is simply wrong and was correctly rejected by the jury and District Court. Mason was responding to an armed robbery, during which the suspect pointed a gun at the victim. King pulled out that gun and raised it up while resisting arrest and ignoring multiple commands, issued at gunpoint by a uniformed police officer, to get on the ground.

Plaintiff-Appellant's argument that Mason was legally required to give some additional warning is also wrong and was correctly rejected by the jury and District Court. The entire interaction occurred over a matter of seconds. Mason did not shoot when he first saw King grab the gun and start tugging at it. Rather, he issued more orders to get down on the ground. He only fired when King pulled out the gun and raised it up. At that point, no further "warning" was feasible. "When the hesitation

- 16 -

involved in giving a warning could readily cause such a warning to be the officer's last, then a warning is not feasible." *Hicks v. Scott*, 958 F.3d 421, 437 (6th Cir. 2020).

As correctly stated by the District Court:

> Given these facts and considering the mere seconds in which this interaction took place, the *Graham* balancing test supports the conclusion that deadly force was used reasonably. As such, the Jury's verdict cannot be overturned.
>
> Additionally, the Court already addressed this question in our order on Defendant's motion for summary judgment. There, we found that:
>
> "According to Mason, King went for the gun in his waistband but had trouble pulling it out, tugging on it at least three times. According to Mason, it was only when King raised the gun that Mason fired. If that is indeed what happened, then Mason's decision to use deadly force was not unreasonable. Regrettable, tragic, but not unreasonable…"

OPINION & ORDER (R.247, Page ID #9490).

Accepting all facts in the light most favorable to Mason, and drawing all reasonable inferences in Mason's favor, that is exactly what happened during the incident. Mason's conduct was neither objectively unreasonable, nor reckless, and a reasonable jury would have a legally sufficient evidentiary basis to find in Mason's favor. Plaintiff-Appellant's renewed motion for a judgment as a matter of law was properly denied by the District Court. The first assignment of error lacks merit and must be overruled.

### C.    SECOND ASSIGNMENT OF ERROR

For her second assignment of error, Plaintiff-Appellant argues that the District Court erred by denying her motion for a new trial pursuant to Fed. R. Civ. P. 59(a). PLAINTIFF-APPELLANT'S BRIEF (App. R.13, Page ID #25-47). "Juries are in the business of deciding material issues of fact. This case was no exception: A jury determined that the defendant police officer acted reasonably in a tense and dangerous situation. Now, the plaintiff wants another shot to convince another jury otherwise." *Goodwin*, 832 Fed. Appx. at 355. For the following reasons, the District Court did not abuse its discretion in denying Plaintiff-Appellant's motion for a new trial.

### 1. The Verdict was Not Against the Clear Weight of the Evidence

The District Court correctly rejected Plaintiff-Appellant's argument that the verdict in this case was against the manifest weight of the evidence. OPINION & ORDER (R.247, Page ID #9494). A verdict is against the clear weight of evidence only if the verdict was unreasonable. *See Barnes*, 201 F.3d at 820-21 (citation omitted). "[I]f a reasonable juror could reach the challenged verdict, a new trial is improper." *Id.* at 821. To make the determination, a court "must compare the opposing proofs, weigh the evidence, and set aside the verdict only if it determines that the verdict is against the clear weight of the evidence." *United States v. L.E. Cooke Co.*, 991 F.2d 336, 343 (6th Cir. 1993) (citing *Woodbridge v. Dahlberg*, 954 F.2d 1231, 1234 (6th Cir. 1992)).

The facts in evidence demonstrate that the jury's verdict was reasonably reached. King had stopped running, ignored commands, went for the gun in his waistband, pulled out the gun, and it was only when King raised the gun that Mason fired. And despite Plaintiff-Appellant's arguments, King was not fleeing when he was shot.

Plaintiff-Appellant contends that it is undisputed that the first shot fired by Mason was the head shot that entered King's temple. But the District Court correctly determined that "the facts elicited at trial do not indisputably establish the order of the shots." OPINION & ORDER (R.247, Page ID #9491). The only witness who testified that shot came first was Plaintiff-Appellant's expert, Jeremy Bauer, Ph.D. In his deposition (taken in 2021) and in his expert report (disclosed in 2020), Bauer stated that the order of the head shot and abdomen shot were unknown and that he could not determine which of those two shots came first. JANUARY 18, 2023 TRIAL TRANSCRIPT (R.241, Page ID #8664-67; 8673-74). Despite the fact that he did not receive or review any new evidence, he changed his opinion on this point when testifying at trial. *Id*. Defense counsel cross-examined Bauer regarding the inconsistencies in his opinion, and the jury was free to weigh his credibility in light of those inconsistencies. Thus, it is not "undisputed" that Mason's first shot struck King's head and the District Court correctly determined that "[g]iven these inconsistencies,

a reasonable jury could disregard, or place less weight upon Dr. Bauer's testimony."

OPINION & ORDER (R.247, Page ID #9491).

The District Court also correctly determined:

> Further, even if the first shot was to the side of King's head, it does not necessarily follow that King must have been fleeing at the time. It does not follow that King was actively "running away." (ECF No. 236, at 8.) While his head may not have been facing Officer Mason, his body may have been. This is especially true given the short duration and chaotic events of the incident. The jury could reasonably conclude that King merely turned his head at the time of the shooting.

*Id.*

Moreover, even if the head shot was first, it does not change the analysis in this case regarding whether Mason acted reasonably when faced with a felony suspect who pulled out a gun and raised it up while resisting arrest. As correctly noted by the District Court (OPINION & ORDER (R.247, Page ID #9493)), Plaintiff-Appellant ignores Mason's testimony that King "[h]ad the grip" of his gun "and was tugging up to pull the firearm" when Mason shot him. JANUARY 18, 2023 TRIAL TRANSCRIPT (R.241, Page ID #8575).

Plaintiff-Appellant contends that Mason's testimony about how the shooting occurred cannot be accurate because King was not directly facing Mason when the head shot occurred. Plaintiff-Appellant, however, repeatedly misconstrues Mason's testimony about the direction King was facing when he fired his weapon. Mason has

consistently testified that he shot at King's front, left side, and that King was canted away from him and pulling a gun out of his waistband when he fired his weapon. JANUARY 20, 2023 TRIAL TRANSCRIPT (R.243, Page ID #9063-64, 9075-76). Mason repeatedly testified that King was "canted" or turned slightly away from him—not facing him directly. *Id.* Mason's testimony that he shot at King's front, left side is consistent with Bauer's testimony regarding the bullet paths entering through King's left side. *See* JANUARY 18, 2023 TRIAL TRANSCRIPT (R.241, Page ID #8658-60).

Furthermore, even if King was looking away from Mason when Mason first fired his weapon, it does not mean the shooting was unreasonable. What matters is whether King was pulling the gun from his waistband and creating an imminent threat of physical harm to Mason or others at the time Mason fired. Reffitt was on the other side of the parked Honda Accord, so even if King was looking away from Mason, then he would have been looking in Reffitt's direction when he was pulling the gun out of his waistband. *See id.* (R.241, Page ID #8662). In either scenario, King would still pose a deadly threat to Mason, Reffitt, and others.

The District Court correctly determined that Plaintiff-Appellant misconstrues the trial testimony to support her contention that the manifest weight of the evidence shows that King was fleeing. OPINION & ORDER (R.247, Page ID #9492). Contrary to Plaintiff-Appellant's assertion, Sister Skora specifically testified that King *was not fleeing* when he was shot:

Q Right. Okay. And he was running away when he was shot by the police officer?

A No. When—when first time he called him and he gave him directions, he wants to run away because, you know, like, didn't think that police officer was, like, serious, so he tried to just run away.

Q Right. So at that time he was moving his body trying—

A Back and—yes, left and right to try—this way he can avoid him or this way he can avoid him.

Q And was he still doing that, running left and right like that, at the time that the police officer shot him?

A No, he was straight. He stood up. He stood up straight.

JANUARY 18, 2023 TRIAL TRANSCRIPT (R.241, Page ID #8465-67); SKORA DEPOSITION DESIGNATION, pp. 54:23-55:15 (R.190-1).

The District Court also correctly determined that Plaintiff-Appellant ignores the credibility issues with Braxton's testimony. OPINION & ORDER (R.247, Page ID #9492). The District Court correctly stated:

> Braxton admitted on direct examination that the statement he gave to police the night of the shooting was false. (January 19 Trial Transcript, ECF No. 242, at 444–45.) He also admitted to taking cocaine and marijuana that day and that he changed numerous aspects of his testimony between his deposition and trial. (*Id.*, at 446, 454–55.) Further, Braxton answered affirmatively on cross examination that he "could not see whether or not Mr. King pulled out the gun because [he] could not see that far." (*Id.*, at 476.) Finally, Akilah Bulger, Braxton's girlfriend at the time, impeached his testimony. When asked whether "Demetrius Braxton told you that Ty pointed the gun at the officer," and she answered yes. (January 20 Trial Transcript, ECF No. 243,

at 729.)

*Id.* (R.247, Page ID #9492-93).

The District Court also correctly determined that Plaintiff-Appellant's reliance on William Scott's testimony is misplaced because it is contradicted by the physical evidence. *Id.* (R.247, Page ID #9493). As Plaintiff-Appellant asserts, Scott testified that King was shot in the back. JANUARY 19, 2023 TRIAL TRANSCRIPT (R.242, Page ID #8704). However, his testimony is disproven by the physical evidence and Plaintiff-Appellant's expert witness. JANUARY 18, 2023 TRIAL TRANSCRIPT (R.241, Page ID #8620-24; 8638-40). Additionally, as noted by the District Court (OPINION & ORDER (R.247, Page ID #9493)), Mason played an audio call at trial, captured when Scott called 911, in which Scott stated, "I'm no witness to nothing." JANUARY 19, 2023 TRIAL TRANSCRIPT (R.242, Page ID #8716-17).

As correctly determined by the District Court:

> Finally, even if King had decided to flee at the time of the shooting, that decision would not change the Court's analysis, as the jury could still conclude that he was pulling his weapon. As the Court mentioned above and, in its summary judgment order, such an action, when put in context with the prior robbery, failure to obey commands, and physical location, could make King an imminent threat in a reasonable officer's eyes and justify the use of deadly force… The Court rejects Plaintiff's argument that the motions King made with his arms are irrelevant to Officer Mason's decision to shoot.

OPINION & ORDER (R.247, Page ID #9493-94).

Comparing the proofs and weighing the evidence does not justify setting aside the jury's verdict. A motion for new trial should be denied "if the verdict is one which could reasonably have been reached." *Woodbridge*, 954 F.2d at 1234. "[A] verdict is not unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable." *Id*. The evidence in this case was not so clearly in Plaintiff-Appellant's favor that no "reasonable juror could [have] reach[ed] the challenged verdict[.]" *Barnes*, 201 F.3d at 821. The evidence presented at trial demonstrated that Mason's conduct was neither objectively unreasonable nor reckless. A new trial on the basis of the weight of the evidence is therefore not appropriate.

### 2. The Jury Instructions Were Neither Erroneous Nor Prejudicial

The District Court correctly rejected Plaintiff-Appellant's argument that she is entitled to a new trial because one jury instruction "does not accurately state the law and caused prejudice to Plaintiff." PLAINTIFF-APPELLANT'S BRIEF (App. R.13, Page ID #31). The challenged instruction is as follows: "[i]f you decide Officer Mason's actions were objectively reasonable, then you must find that he did not act recklessly." *Id*. The District Court correctly determined that Plaintiff-Appellant's challenge fails and that the Sixth Circuit has directly addressed this issue a number of times. OPINION & ORDER (R.247, Page ID #9494).

The Sixth Circuit has held that if "the officers were objectively reasonable in shooting [King], it logically follows that they could not have been reckless in shooting [King]." *Pollard*, 780 F.3d 395 at 404; *see also Ewolski v. City of Brunswick*, 287 F.3d 492, 517 (6th Cir. 2002). The Circuit reiterated its position in the recent case of *Cooper v. City of Columbus*. There, it analyzed this issue, finding that an officer's actions cannot be both objectively reasonable and reckless at the same time. The Circuit reasoned as follows:

> Ohio law immunizes police officers from suit unless their "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b). Plaintiff contends that the officers acted in a reckless manner by "escalating" the situation— looking for criminal activity and then opening the car door and grabbing Bell-McGrew's hand—and that statutory immunity cannot lie given his contention that an officer's conduct can be both objectively reasonable under the Fourth Amendment and reckless for purposes of Ohio's statutory immunity provision. We disagree. Plaintiff is correct that "[s]tatutory immunity under Ohio law, which applies to state law claims, is distinct from federal qualified immunity." *Stewart v. City of Euclid*, 970 F.3d 667, 676 (6th Cir. 2020). That notwithstanding, we have said many times over that "[w]hen federal qualified immunity and Ohio state-law immunity under § 2744.03(A)(6) rest on the same questions of material fact, we may review the state-law immunity defense through the lens of the federal qualified immunity analysis." *Downard for Est. of Downard v. Martin*, 968 F.3d 594, 602 (6th Cir. 2020) (internal citation omitted). And in the context of a police officer's use of deadly force, the analysis coincides: "[I]f an officer has probable cause to believe that a person poses an immediate threat of serious injury, the officer's use of deadly force against that person is not reckless." *Sabo v. City of*

*Mentor*, 657 F.3d 332, 337 (6th Cir. 2011). Here, because both officers reasonably perceived a serious threat of injury, they are entitled to statutory immunity under Ohio law. *Hicks*, 958 F.3d at 441 (holding that because an officer's use of deadly force was reasonable, he was entitled to statutory immunity under Ohio law); *Mullins*, 805 F.3d at 769 ("Because we find that [the officer]'s use of deadly force was not objectively unreasonable under the circumstances, it follows that he did not act with 'malicious purpose, in bad faith, or in a wanton or reckless manner as required to avoid statutory immunity under Ohio law."). Nor does it matter that they "escalated" the situation—no rational juror could conclude their actions displayed "conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Downard*, 968 F.3d at 602 (quoting *Argabrite v. Neer*, 149 Ohio St. 3d 349, 2016- Ohio 8374, 75 N.E.3d 161, 164 (Ohio 2016)).

*Cooper*, 2023 U.S. App. LEXIS 2629, *25-27 (6th Cir.).

Ohio's courts agree with the federal courts on this point of law. The Second Appellate District case of *Jordan v. Howard* illustrates this concord. There, the Court reasoned that a finding of objective reasonableness in federal court barred plaintiff's wrongful death claim in state court. The Court explained as follows:

The trial court concluded that collateral estoppel applied because the same evidence would sustain both the state issue and the issue litigated in federal court. We agree. The underlying facts are the same if the issue were phrased as whether the officers acted recklessly or if it were phrased as whether the officers acted reasonably for purposes of qualified immunity. Notably, "collateral estoppel prohibits relitigation of "a fact or a point that was actually and directly at issue in a previous action." *Fort Frye Teachers Assn.*, 81 Ohio St.3d at 395, 692 N.E.2d 140. Here, the

federal district court granted summary judgment to the police officers on the basis of qualified immunity, finding that "their conduct was objectively reasonable and did not violate clearly established law." *Jordan I*, 440 F.Supp.3d at 857. The court also stressed that "[t]he use of deadly force by a police officer is justified 'when the factual situation revealed a perceived serious threat of physical harm to the officer or others in the area from the perspective of a reasonable officer.'" *Id.*, quoting *Sample v. Bailey*, 409 F.3d 689, 697 (6th Cir. 2005). As indicated previously, the federal case was resolved on summary judgment, and the parties had a full opportunity to litigate.

In view of the findings in the federal district and appellate courts that the officers' use of deadly force (resulting in McShann's death) was reasonable, and that they did not violate established law, it would be factually and logically inconsistent to conclude in this action that the officers were reckless in causing McShann's death and, therefore, were not entitled to immunity under R.C. 2744.03(A)(6). Accordingly, the trial court did not err in applying collateral estoppel to the wrongful death claim brought by Jordan. As a result, the first assignment of error is without merit and is overruled.

*Jordan v. Howard*, 2d Dist. Montgomery No. 29190, at ¶ 71-75 2021-Ohio-4025.

Plaintiff-Appellant cites to *Wilson v. Gregory* for the proposition that "the question of whether a defendant's actions 'constituted a violation of particular federal constitutional rights under § 1983 is a substantially different question than whether [the defendant] acted with malicious purpose, in bad faith, or in a wanton or reckless manner as Ohio law uses those terms.'" PLAINTIFF-APPELLANT'S BRIEF (App. R.13, Page ID #32) (quoting *Wilson v. Gregory*, 3 F.4th 844, 860-861 (6th Cir. 2021)). In *Wilson*, however, the federal qualified immunity analysis turned on

whether the constitutional right at issue was "clearly established." Consequently, the question of state-law immunity under Ohio Revised Code 2744.03 (a)(6) could not be reviewed "through the lens of the federal qualified immunity analysis" because Ohio statutory immunity does not turn on whether a right was clearly established. *Wilson*, 3 F.4th at 861. *Wilson* is not even a use of force case, much less a case in which an officer's use of deadly force was found to be objectively reasonable, such as in *Pollard*, *Cooper*, or *Jordan*.

In this case, Mason's use of deadly force was objectively reasonable, so Mason could not have been reckless. *Pollard*, 780 F.3d at 404. Plaintiff-Appellant is now essentially arguing the jury could have found bad faith or malicious purpose for the shooting based on Braxton's heavily disputed and contradicted accusation that Mason said a racial slur after the shooting. But Plaintiff-Appellant voluntarily dismissed her Equal Protection claim at trial and decided to proceed only on recklessness for her state law claim.

The District Court correctly determined that "[i]n light of the plethora of Sixth Circuit cases, as well as the state court support, on this issue, the Court finds that the challenged instruction is not erroneous. Plaintiff's argument fails." OPINION & ORDER (R.247, Page ID #9496). Plaintiff-Appellant is not entitled to a new trial based on the jury instructions.

### 3. The Evidentiary Rulings Were Neither Erroneous Nor Prejudicial

The District Court's evidentiary rulings in this case were neither erroneous nor prejudicial. Furthermore, an erroneous evidentiary ruling amounts to reversible error, justifying a new trial, only if it was not harmless; that is, only if it affected the outcome of the trial. *Cummins v. BIC USA, Inc.*, 727 F.3d 506, 510 (6th Cir. 2013). And because "[t]he district court has broad discretion to determine questions of admissibility; an evidentiary ruling is not to be lightly overturned." *Cummins*, 727 F.3d at 510. With that standard in mind, each of Plaintiff-Appellant's evidentiary arguments lack merit for the reasons that follow.

#### a. Cover and Communication Theory

The District Court properly excluded Plaintiff-Appellant's cover and communication theory because it was irrelevant to the sole issue before the jury: whether Mason had probable cause to believe he was at risk of serious physical harm at the moment he used force. Plaintiff-Appellant's new argument, that her cover and communication theory was related to some scenario in which Mason shot King merely because King was armed, is clearly wrong. Not only did Mason never argue or insinuate that he shot King merely because King was armed, Mason's use-of-force expert specifically testified that Mason would not have complied with national policing standards if he shot King but King never reached for the gun in his waistband. JANUARY 23, 2023 TRIAL TRANSCRIPT (R.246, Page ID #9405-06). And Mason's

closing argument specifically stated: "This case truly boils down to one simple question: Did Tyre King pull out that gun? The answer to that question is yes. That means Bryan Mason had every right to defend himself. That means this was an objectively reasonable use of force." JANUARY 24, 2023 TRIAL TRANSCRIPT (R.244, Page ID #9213-14).

Plaintiff-Appellant was not attempting to argue that Mason should have taken cover at the moment that King was pulling the gun. Rather, Plaintiff-Appellant was attempting to argue that had Mason taken cover when he first encountered King, then the confrontation would not have been deadly and Mason would not have had to use deadly force once King was pulling the gun. In his deposition, Plaintiff-Appellant's expert witness Tucker opined that the shooting was unreasonable because "[i]t wasn't necessary for [Mason] to shoot King because [Mason] was so close to the car right there he could have taken concealment and cover and then communicated with King. If King came out and pointed a toy gun at him or any kind of gun or whatever, he could have communicated with him and said, drop it, you know, avoided the shooting…" TUCKER DEP. 109 (R.128-1 #1917). The Sixth Circuit has specifically considered and rejected Tucker's "cover and communication" theory, finding it to be irrelevant and inadmissible in a police-involved shooting case. *Goodwin,* 832 F. App'x at 358.

Plaintiff-Appellant's cover and communication theory is directly contrary to

the holdings of the Sixth Circuit and United States Supreme Court and was properly excluded. Courts in Section 1983 claims perform a segmenting analysis. *See Livermore*, 476 F.3d at 406. The relevant inquiry in such an analysis is "whether the force used to effect [the seizure] was reasonable in the totality of the circumstances, not whether it was reasonable for the police to create the circumstances." *Id.* (quoting *Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir. 1992)). The issue before the jury was whether, at the moment that Mason the shot King, his use of deadly force was objectively reasonable. *See Goodwin,* 832 F. App'x at 358, citing *Cnty. of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1547, 198 L. Ed. 2d 52 (2017) (emphasis added). As such, the cover and communication theory was irrelevant to Plaintiff-Appellant's Section 1983 claim and could have prejudiced the jury.

Regarding Plaintiff-Appellant's state-law claim, the result under the analysis used by Ohio's courts is identical. The Tenth District Ohio Court of Appeals found "[t]he 'relevant inquiry before the court [was] whether [Officer Mason], from his own perspective, reasonably had probable cause to believe that he [was] at imminent risk' of serious physical harm when he fired his weapon." *Hayes v. Columbus*, 2014-Ohio-2076, 2014 WL 2048176, at *11 (citing *Kendzierski v. Carney*, 2005-Ohio-6735 at ¶ 29 (Ct. App.)). This analysis, like the federal Section 1983 analysis, does not consider whether an officer had the opportunity to take cover and communicate before he engaged with a subject. The only relevant question is, at the moment he

used force, did the officer have probable cause to believe he was at imminent risk of serious physical harm. Under this inquiry, Plaintiff-Appellant's cover and communication theory is irrelevant. In properly excluding the cover and communication theory, the District Court correctly saw no reason to ignore the Tenth District of Ohio Court of Appeals' interpretation of state law. EVIDENTIARY RULINGS (R.223, Page ID #7151); OPINION & ORDER REGARDING EXPERT (R.222, Page ID #7138); OPINION & ORDER (R.247, Page ID #9496).

For the reasons stated above, the District Court correctly excluded Plaintiff-Appellant's cover and communication theory. Furthermore, the evidentiary ruling did not, and could not, affect the outcome of the trial. Mason's use of deadly force was the material fact underlying Plaintiff-Appellant's federal and state-law claims. The shooting would have been a battery giving rise to a wrongful death claim had Mason used more force than is objectively reasonable under the circumstances. But the jury found Mason's use of deadly force to be objectively reasonable. Thus, Mason could not have been reckless, as explained above, even if Plaintiff-Appellant's cover and communication theory was presented to the jury for the purpose of the state-law claim. For all of the reasons above, this ruling was neither erroneous nor prejudicial.

### b. Mason's Prior Uses of Force

The District Court properly excluded evidence of Mason's prior uses of force. Rule 404(b)(1) of the Federal Rules of Evidence states "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." As correctly determined by the District Court, "[i]f evidence of Mason's prior uses of force was admitted, it [would have done] exactly that." EVIDENTIARY RULINGS (R.223, Page ID #7158). Further, "Mason's prior uses of force are not probative of his motive or intent in this case. Mason's decision to use his weapon in the past, in entirely different factual situations, is not probative of his motive/intent here." *Id.*

Mason's prior uses of force were not even bad acts, as contemplated by Rule 404(b)(1). Mason's uses of deadly force during each of these incidents was justified. *See* MASON AFF. ¶¶33-37 (R.136-2, Page ID #2897); MASON AFF. EX.13 (R.136-15, Page ID #2913-17); MASON AFF. EX.14 (R.136-16, Page ID #2918-22); MASON AFF. EX.15 (R.136-17, Page ID #2923); MASON AFF. EX.16 (R.136-18, Page ID #2924). Mason was not charged with a crime for his conduct during any of the incidents. *See* MASON AFF. ¶37 (R.136-2, Page ID #2897). Each of these incidents was thoroughly investigated, and Mason's conduct was not found to be in violation of any version of the City's use-of-force directives. *Id.* No civil claims were successfully prose-

cuted against Mason. *Id.* And, other than Braxton's false allegation in this case, Mason has never been accused of bias or racial profiling. MASON DEP. 38-39 (R.132-1, Page ID #2629-30).

On January 6, 2023 the parties attended the final pretrial conference (NOTICE OF FINAL PRETRIAL CONFERENCE (R.212, Page ID #6939)) which was transcribed by a court reporter. This issue was one of the topics that was argued by the parties. The District Court correctly describes that argument, and its ruling, as follows:

> It is not even clear that Mason's prior uses of force were bad acts, as contemplated by Rule 404(b)(1). Counsel for Defendant described the prior shootings by Mason in great detail during the January 6, 2023 final pretrial conference. In that description, all the prior shootings were justified and lawful. Plaintiff's counsel were asked if they disagreed with the defense characterization of the shootings, to which they responded in the negative. Mason was never disciplined for any of these actions, and "[n]o civil claims were successfully prosecuted against Mason." (ECF No. 216, Page 3). As such, no reasonable juror could conclude that Mason's prior uses of force are relevant to the use of force at hand. *Huddleston v. United States*, 485 U.S. 681, 689 (1988). Evidence of Mason's prior uses of force does not fit into the 404(b)(2) exceptions.

EVIDENTIARY RULINGS (R.223, Page ID #7158). *See also* OPINION & ORDER REGARDING EXPERT (R.222, Page ID #7139). Notably, Plaintiff-Appellant did not order the transcript of the January 6, 2023 final pretrial conference for purposes of this appeal nor has she submitted any other evidence supporting a conclusion that the District Court wrongly described those proceedings. *See* Fed. R. App. P. 10(b).

The District Court also correctly concluded:

> Even if the Court found that the prior uses of force did fit into one 404(b)(2) exception or another, they would still not be admissible. The Court would exclude them as significantly more prejudicial than probative under Fed. R. Evid. 403. Mason's prior instances of force have very little relevance to his motive and intent here. There is no evidence in the record that Mason's previous shootings were anything other than lawful. The prejudice to Defendant, on the other hand, would be great. The other acts would likely overwhelm the facts at issue in this trial. The prior shootings and use of force would focus on matters other than the facts of this case.
>
> Further, while it appears that no court in the Sixth Circuit has directly addressed this exact issue in the civil context, courts in similar positions have excluded similar evidence, and such exclusions have been upheld. *See Helfrich v. Lakeside Park Police Dep't*, 497 F. App'x 500, 507 (6th Cir. 2012); *Simmons v. Napier*, 626 F. App'x 129, 135 (6th Cir. 2015).

EVIDENTIARY RULINGS (R.223, Page ID #7158-59).

For the reasons stated above, the District Court correctly excluded evidence of Mason's prior uses of force. Furthermore, the evidentiary ruling did not affect the outcome of the trial. Because the jury found Mason's use of deadly force to be objectively reasonable, Mason could not have been reckless and the jury could not have awarded punitive damages. For all of these reasons, this ruling was neither erroneous nor prejudicial.

### c. Mason's Post-Incident Reassignment

The District Court properly excluded evidence of Mason's post-incident reassignment. The City reassigned Mason because it wanted to protect an officer who had been in an extremely stressful incident and who was receiving death threats. MASON DEP. 21-25 (R.132-1); JACOBS DEP. (R.141-12 #4486-89); BASH DEP. (R.141-5 #3955-56). As correctly stated by the District Court:

> "[T]he issue before the jury is whether, at the moment that Mason shot King, his use of deadly force was objectively reasonable." (ECF No. 193, Page 4). This question does not revolve around Chief of Police Jacobs' opinion of Mason's suitability for a patrol assignment. In addition, the Chief did not make a formal determination of wrongdoing.

EVIDENTIARY RULINGS (R.223, Page ID #7158-59). The District Court correctly concluded:

> Mason's later reassignment is not probative of his earlier actions. Further, such evidence could be highly prejudicial and is excludable under Rule 403. There is a real possibility the evidence Mason was reassigned could bias the jury against him.

EVIDENTIARY RULINGS (R.223, Page ID #7159-60). This ruling was neither erroneous nor prejudicial.

### d. Lack of DNA Sample

Plaintiff-Appellant next argues that the District Court committed reversible error when it prevented her from questioning Mason "regarding whether or not he had submitted a DNA sample for comparison to the DNA samples found on the BB

gun." She argues that this evidence is "relevant to the question of how the BB gun traveled from Tyre's position to the location it was found in, and significantly undercuts Defendant Mason's credibility." In essence, the questioning would imply that Mason deliberately moved the gun to a different position to support his claim that the force used was reasonable. But the District Court correctly determined that no testimony supported this claim. OPINION & ORDER (R.247, Page ID #9498).

The District Court properly addressed this point in trial by stating:

> [A] jury is allowed to do one thing and not another. They are allowed to use their common sense and draw inferences. If one fact exists, from that they can infer another fact exists.
>
> At the same time, though, these instructions—that's why we always tell them you take the whole packet, not one page at a time. There's an assumption that the law was followed unless there's proof otherwise.
>
> And if you were asking—if the theory here were that—if there were one witness who said he threw the gun and this is where the gun lands, you can make that argument. But there's no witness that says that.
>
> I would have to assume, not just a different set of facts, but a different set of facts and basically something akin to a criminal conspiracy, to put the gun in a place where it wasn't at a crime scene.
>
> So, respectfully, I get the argument. It just isn't developed with enough facts. Otherwise, it ends up in the realm of speculation.

JANUARY 23 TRIAL TRANSCRIPT (R.246, Page ID #9445-46).

To be clear, Reffitt specifically testified that upon being shot, King dropped

his gun which hit the parking block in front of the parked car and landed in front of the car's driver's side front tire. JANUARY 23, 2023 TRIAL TRANSCRIPT (R.246, Page ID #9326). Plaintiff-Appellant wanted the jury to ignore that testimony and to speculate as to all of the following: (1) if Mason was asked to submit a DNA sample during the investigation of the incident, that DNA sample would have shown that Mason touched King's gun; (2) if Mason touched King's gun, that must have meant that Mason threw King's gun under the parked car's tire; (3) if Mason threw King's gun under the parked car's tire, that must have meant that King never pulled the gun out of his waistband; (4) if King never pulled the gun out of his waistband, then Mason must have shot King with no justification and nefariously altered a crime scene to cover up a crime.

The presentation of Plaintiff-Appellant's theory at trial would have invited the jurors to draw inference upon inference upon inference in the hopes that they would speculate that Mason might have pulled the gun out of King's waistband and threw it under the car's tire. But the facts in the record certainly do not create an inference that Mason destroyed a crime scene. *See* JANUARY 23 TRIAL TRANSCRIPT (R.246, Page ID #9439). The trial in this case took place over six years after the date of the incident and over four years after this lawsuit was filed. No witness ever testified that Mason touched King's gun, or took the gun off of King's body and threw it, or destroyed the crime scene in any way. Despite the broad scope of civil discovery,

Plaintiff-Appellant never asked to collect Mason's DNA or to compare Mason's DNA to the DNA samples found on King's gun. Nor did Plaintiff-Appellant disclose any DNA lab results as a trial exhibit she intended to use or an expert to testify about DNA testing.

The Court correctly inquired and concluded:

> THE COURT: No offense, there's got to be probative value. There's no dispute that [King] had the gun, right? So whether his DNA is on it or not doesn't take us there.
>
> MR. SIDOTI: Well, the officer is indicating he never touched it, nor did Officer Reffitt from his deposition testimony.
>
> THE COURT: Was this officer's DNA on the gun?
>
> MR. SIDOTI: There's two unidentified males on the gun, and they have can't say it's in or out of Demetrius Braxton and Tyre King.
>
> THE COURT: If it were his DNA, I would let you use it, but it's male unknown. I don't think there's any probative value to it, not when the gun itself isn't disputed.

JANUARY 20 TRIAL TRANSCRIPT (R.243, Page ID #9073).

As correctly determined by the District Court, "[a]s the probative value of Plaintiff's theory is significantly outweighed by the unfair prejudice it would cast upon Defendant, it is excludable under Rule 403 of the Federal Rules of Evidence." OPINION & ORDER (R.247, Page ID #9498-99). This ruling was neither erroneous nor prejudicial.

### e. Facts Not Known By Mason

The District Court properly admitted the testimony of Michael Ames. Ames' testimony regarding the robbery helped provide context to the jury to explain how and why Mason encountered King. *See Old Chief v. United States*, 519 U.S. 172, 189 (1997). If the jury did not hear about the robbery, King's flight, his resistance, and the location of the gun in King's waistband when he first encounters Mason, the case would not have made any sense. *See id.* (explaining jurors "who hear a story…may be puzzled at the missing chapters"). Testimony from Ames was relevant to showing the totality of the circumstances faced by Mason at the time he used force. Importantly, Ames got an excellent view of King's gun as he was being robbed and he thought it was real. JANUARY 20, 2023 TRIAL TRANSCRIPT (R.243, Page ID #8956-59).

Additionally, Plaintiff-Appellant's choice to call William Scott at trial necessarily made Ames' testimony admissible to challenge Scott's credibility. Ames' description of the robbery (JANUARY 20, 2023 TRIAL TRANSCRIPT (R.243, Page ID #8958-59)) was dramatically different than Scott's. JANUARY 19, 2023 TRIAL TRANSCRIPT (R.242, Page ID #8732-38). Furthermore, evidence about the robbery went to the issues of King's damages and causation. The jury could consider King's behavior as Plaintiff-Appellant sought damages for King.

### D. THIRD ASSIGNMENT OF ERROR

For her third assignment of error, Plaintiff-Appellant argues that the District Court erred by granting summary judgment in favor of the City. PLAINTIFF-APPELLANT'S BRIEF (App. R.13, Page ID #47-65). For the following reasons, the third assignment of error lacks merit and must be overruled.

It is now well established that a municipality may be held liable under 42 U.S.C. § 1983, but only for its own acts. *Monell*, 436 U.S. at 690–91. In order to establish a claim for municipal liability under § 1983, a plaintiff must establish that: (1) his or her constitutional rights have been violated and (2) some policy or custom of the municipality itself led to that violation. *Garner v. Harrod*, 656 Fed.App'x.755, 760 (6th Cir. 2016); *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). Thus, there can be no municipal liability without first establishing an underlying constitutional violation. *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Garner*, 656 Fed.App'x. at 760; *Robertson*, 753 F.3d at 622.

As stated above, this Court may affirm a decision of the district court for any reason supported by the record, including on grounds different from those on which the district court relied. Because the jury found no constitutional violation by Mason, the City cannot be liable under *Monell* for an allegedly unconstitutional custom or policy. The third assignment of error lacks merit and must be overruled for that reason alone.

Furthermore, for the following reasons, the District Court correctly determined that Plaintiff-Appellant cannot establish that Mason acted pursuant to municipal custom or policy as is required to impose liability upon a municipality for a constitutional violation. Plaintiff-Appellant needed to establish the existence of a municipal custom or policy, a constitutional violation, and a causal link between the two. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Custom or policy can take the form of (1) official policy or legislative enactment, (2) decisions or ratifications of final decision makers, (3) inadequate training or supervision, or (4) a custom of acquiescence to or tolerance of rights deprivations. *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019). The District Court correctly determined that Plaintiff-Appellant could not do any of those things.

### 1. Official Policy or Legislative Enactment

Plaintiff-Appellant could not point to any improper official policy or legislative enactment as the source of Mason's conduct. She did not present evidence of any improper legislative enactment or official policy. The City presented evidence that CPD formal rules include, for example, Directive 2.01(II)(B)(1) that states, "[s]worn personnel may use deadly force when the involved personnel have reason to believe the response is objectively reasonable to protect themselves or others from the imminent threat of death or serious physical harm." PAIGE AFF. ¶27 (R.136-23, Page ID #2942); PAIGE AFF. EX.4 (R.136-27, Page 3 of 10).

Using the first method of establishing municipal liability, a plaintiff must show "that there 'were formal rules or understandings—*often but not always committed to writing*—that [were] intended to, and [did], establish fixed plans of action to be followed under similar circumstances consistently and over time.'" *Jackson*, 925 F.3d at 829 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)) (emphasis and alteration in *Jackson*). Plaintiff-Appellant must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Id.* (quotation omitted). Plaintiff-Appellant wrongly alleged that the City has two policies: (1) "that police officers are allowed to use deadly force if they experience subjective fear[,]" and (2) "for police officers to shoot when the suspect has their hand on a weapon or when they merely reach in the direction of a weapon." OPP'N (R.141, Page ID #3130-31).

Regarding the first purported policy, Plaintiff-Appellant did not present sufficient evidence to connect this "policy" to the City. Plaintiff-Appellant attempted to connect this "policy" to the City using only the following:

> BY MS. GELSOMINO:
>
> Q. Is it the position of the department that speculative concern about potential danger can justify deadly force?
>
> MR. HALLORAN: Objection.
>
> A. If the officer at the time she pulled the trigger believed him to be a threat to the public I would say yes.
>
> BY MS. GELSOMINO:

Q. Even if she considered at the time that he could present a future threat to the public—

A. It was an apartment complex that had a lot of people out that day, so I believe she thought, this guy did a home invasion, now he has access to weapons, he's bold enough to steel (*sic*) a police car, in her mind he posed a threat to the public.

Q. And that's because of something he might do in the future?

MR. HALLORAN: Objection.

A. That he had the capability to do based on what she was describing.

BY MS. GELSOMINO:

Q. Okay. So, is it the department's position that if an officer believes that a person has the capability of potentially committing harm in the future that that can justify the use of deadly force?

MR. HALLORAN: Objection.

A. No. Your use of the terminology in the future is what I take exception with in this particular case. I believe that she felt that he was, you know, pretty much on a crime spree there. He committed a home invasion, he chases a police officer, he steels (*sic*) her cruiser, the cruiser has weapons in it, it's a densely populated area, and she believed that he was a danger to the public right then and there. I don't believe necessarily that your use of in the future was what she was thinking at the time she pulled the trigger.

PILYA DEP. (R.141-1, Page ID #3290-92). The District Court correctly concluded that this testimony alone does not connect a policy of allowing deadly force based on subjective fear to the City.

Regarding the second purported "policy," King cited only to evidence of police training. OPP'N (R.141, Page ID #3131) (citing SHAW DEP. (R.141-2, Page ID #3515)). The District Court correctly determine that this evidence fits more neatly with Plaintiff-Appellant's failure to train argument. It is addressed in more detail below.

## 2. Policymaker Ratification

Plaintiff-Appellant's evidence does not establish policy through ratification, the second method of establishing municipal liability. The Supreme Court has recognized that policy can come in the form of a single decision by a person with policymaking authority. *Pembaur*, 475 U.S. 469 at 480-81. In these cases, the policymaker must be the final decisionmaker. *See id.* at 485. That is, while a subordinate carries out the act itself, that subordinate was following the orders of this person, and this person's orders were final. The basic premise: my hand, your will. Evidence of such a one-shot policy can come in the form of orders preceding the act, as well as ratifications. Compare *id*. at 845 with *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality). In either event, the order must have a constraining effect on the subordinate's options, so that the subordinate's only option—outside disobedience—is to carry out the unlawful act. *Praprotnik*, 485 U.S. at 127. Plaintiff-Appellant has not presented any evidence that Mason was carrying out the orders of anyone else, let alone someone with final decision-making authority.

The fact that neither the City nor the jury came to the conclusion about the King incident that Plaintiff-Appellant would have preferred does not itself constitute ratification of unconstitutional conduct. Furthermore, Plaintiff-Appellant "must still 'prove that the ratification was a moving force in causing the constitutional violation.'" *Stillwagon v. City of Del.*, 175 F. Supp. 3d 874, 904 (S.D. Ohio 2016) (quoting *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 n.6 (6th Cir. 1993); *Williams v. Ellington*, 936 F.2d 881, 884–85 (6th Cir. 1991)). This, however, can *never* be the case when the purported ratification comes *after* the event at issue. Courts have repeatedly held that the "subsequent ratification of the officers' conduct in [a] case cannot logically be the moving force behind the alleged constitutional violation." *Phillips v. Stevens*, Case No. 2:04-cv-207, 2007 U.S. Dist. LEXIS 60215, *34 (S.D. Ohio Aug.16, 2007) (citing *Alexander v. Beale Street Blues*, 108 F. Supp.2d 934, 949 (W.D. Tenn. 1999)); *Williams*, 936 F.2d at 884–85; *Stillwagon*, 2016 U.S. Dist. LEXIS 44223, *64; *France v. Lucas*, Case No. 1:07-cv-3519, 2012 U.S. Dist. LEXIS 151344, *41 (N.D. Ohio Oct.22, 2012), *affirmed by* 836 F.3d 612 (6th Cir. 2016); *Tomazic v. Cleveland*, Case No. 1:04-cv-2252, 2006 U.S. Dist. LEXIS 65682, at *16 (N.D. Ohio Sept. 14, 2006); *Frerichs v. Knox County*, Case No. 3:16-cv-693, 2017 U.S. Dist. LEXIS 115564, *27–30 (E.D. Tenn. July 25, 2017).

Yet Plaintiff-Appellant still argues that this case involves policy through ratification because a final decisionmaker ratified Mason's prior use of allegedly excessive force, and then did so again here, evidencing an existing and continuing policy. However, Plaintiff-Appellant's argument still does not account for the fact that these ratifications did not involve a constraining of Mason's options. There is no evidence to suggest that the City would have viewed Mason as disobeying orders if he had not fired.

Moreover, a key component of Plaintiff-Appellant's theory is not supported by the evidence. As stated above, there is no evidence in the record that Mason's previous shootings (or the King incident) were anything other than lawful. Yet Plaintiff-Appellant still argues without sufficient evidentiary support that Mason previously fired on a non-threatening suspect and that the City ratified this action. Plaintiff-Appellant's evidence does establish that in the past the City investigated Mason following his non-fatal shooting of a suspect. MASON IAB EXCERPTS (R.141-14, Page ID #4567). The investigation documented both Mason's and the suspect's version of events. According to Mason the suspect was attempting to use his gun against Mason when Mason fired upon him. *Id*. (R.141-14, Page ID #4575). According to the suspect he never went for the gun. *Id*. (R.141-14, Page ID #4568). The City concluded its investigation by finding that Mason's use of force was reasonable and conformed to policy. *Id*. (R.141-14, Page ID #4567). Plaintiff-Appellant submits that

this is evidence of the City ratifying Mason's prior use of excessive force. However, while the Court may make reasonable inferences in Plaintiff-Appellant's favor, it is not reasonable to infer that when the City concluded that Mason's use of force was reasonable, it did so believing the suspect's version of events. The District Court correctly determined that Plaintiff-Appellant's evidence does not support a finding of municipal liability under the theory of policy-through-ratification.

### 3. Failure to Train or Supervise

The third method of imposing liability upon a municipality is for its failure to train or supervise. To establish municipal liability for the City's alleged failure to train or supervise, Plaintiff-Appellant must show: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis v. Cleveland Mun. School. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

Here, whether the City's training or supervision shows a "deliberate indifference to the rights of persons with whom the police come into contact" is the determinative inquiry. *City of Canton*, 489 U.S. at 388-89. A plaintiff can establish deliberate indifference by showing that either the City "fail[s] to provide adequate training in light of the foreseeable consequences that could result from a lack of instruction[,]" or "fails to act in response to repeated complaints of constitutional violations

by its officers." *Ellis*, 455 U.S. at 700-01 (quoting *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999).

Plaintiff-Appellant's evidence includes slides from a 2007 training Power-Point, (2007 TRAINING POWERPOINT (R.141-8, Page ID #3993-95)), testimony that the City trains officers to fire before a suspect pulls a gun depending on the totality of the circumstances, (SHAW DEP. (R.141-2, Page ID #3515)), and testimony that between 2009 and King's death a City representative could not recall any cases where the City fired an officer for excessive force (PILYA DEP. (R.141-1, Page ID #3149, 3375)). Plaintiff-Appellant submitted that based on this evidence Mason's use of purportedly excessive force was foreseeable. OPP'N (R.141, Page ID #3140). The District Court correctly did not agree.

CPD recruits receive over 1,000 hours of training, as well as continuing training once they become sworn officers. PAIGE AFF. ¶¶ 12, 18, 20–21 (R.136-23, Page ID #2939-40). The PowerPoint slides at issue are from 2007 and are far from the only training CPD officers receive. Moreover, the CPD's training that an officer's decision depends on the totality of the circumstances does not evidence deliberate indifference. As to the seven-year period where the City's representative could not recall an excessive force termination, that evidence falls short of the showing required to establish that the City was deliberately indifferent. Termination is not a

police department's only tool, and the District Court correctly determined that Plaintiff-Appellant did not show evidence that the City's investigations into excessive force claims were deficient. MSJ OPINION AND ORDER (R.150, Page ID #4863).

Plaintiff-Appellant's claim that the City can be held liable based on an alleged failure to train or supervise lacks sufficient evidentiary support to establish that the City was deliberately indifferent to the rights of those persons who came in contact with police.

### 4. Custom of Tolerance and Acquiescence

The fourth way a plaintiff may establish municipal liability for a custom or policy is to establish that the municipality tolerated or acquiesced in the unconstitutional conduct to such an extent that the conduct can fairly be said to be customary. Plaintiff-Appellant must show:

> (1) the existence of a clear and persistent pattern of [illegal activity];
>
> (2) notice or constructive notice on the part of the [defendant];
>
> (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
>
> (4) that the [defendant's] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citation omitted).

Plaintiff-Appellant contends that the City has a pattern of failing to truly investigate cases of excessive force such that it amounts to a custom of tolerance or acquiescence. However, the District Court correctly determined that Plaintiff-Appellant has not presented evidence establishing a "clear and persistent" pattern of excessive force by CPD officers. MSJ OPINION AND ORDER (R.150, Page ID #4864). Accordingly, Plaintiff-Appellant cannot establish that Mason acted pursuant to municipal custom or policy.

## VII. CONCLUSION

Based on the foregoing, the District Court correctly denied Plaintiff-Appellant's motion for judgment as a matter of law and her motion for a new trial. The District Court also correctly granted summary judgment to the City. For the reasons set forth above, in the District Court's opinion below, and in their briefing below, Defendants-Appellees jointly and respectfully ask this Court to affirm the final judgment that was entered in their favor.

Respectfully submitted,

/s/ Westley M. Phillips
Westley M. Phillips
Litigation Section Chief
City of Columbus, Department of Law
Zach Klein, City Attorney
77 North Front Street, Fourth Floor
Columbus, Ohio 43215
(614) 645-7385 / (614) 645-6949 (fax)
wmphillips@columbus.gov

Counsel for Defendants-Appellees City of
Columbus, Ohio and Bryan C. Mason

# CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief is set in 14-point, Times New Roman type-face, and thus complies with the typeface and style requirements of Fed.R.App. P.32(a)(5) & (6).

I also certify that the foregoing brief contains 12,582 words and complies with the type-volume requirements of Fed.R.App.P.32(a)(7)(B).

I further certify that the foregoing brief complies with all other requirements and limitations of Fed.R.App.P.28 & Fed.R.App.P.32 and 6 Cir.R.28, 6 Cir.R.32.

/s/ Westley M. Phillips
Westley M. Phillips
Litigation Section Chief
City of Columbus, Department of Law
Zach Klein, City Attorney
77 North Front Street, 4th Floor
Columbus, Ohio 43215
(614) 645-7385 / (614) 645-6949 (fax)
wmphillips@columbus.gov

Counsel for Defendants-Appellees City of
Columbus, Ohio and Bryan C. Mason

**CERTIFICATE OF SERVICE**

I certify that, on December 20, 2023, I electronically filed the foregoing brief with the Clerk of this Court by using the Court's CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF System.

/s/ Westley M. Phillips
Westley M. Phillips
wmphillips@columbus.gov

Counsel for Defendants-Appellees City of
Columbus, Ohio and Bryan C. Mason

## DESIGNATION OF RELEVANT
## DISTRICT COURT DOCUMENTS

| ECF# | Document Description | First PageID# | Last PageID# |
|---|---|---|---|
| 1 | Complaint | 1 | 22 |
| 128-1 | Tucker Deposition Transcript | 1890 | 1929 |
| 132-1 | Bryan Mason Deposition Transcript | 2592 | 2750 |
| 136 | Mason Motion for Summary Judgment | 2848 | 2887 |
| 136-2 | Bryan Mason Affidavit | 2890 | 2898 |
| 136-15 | Mason Affidavit Exhibit 13 | 2913 | 2917 |
| 136-16 | Mason Affidavit Exhibit 14 | 2918 | 2922 |
| 136-17 | Mason Affidavit Exhibit 15 | 2923 | 2923 |
| 136-18 | Mason Affidavit Exhibit 16 | 2924 | 2924 |
| 136-23 | Thomas Paige Affidavit | 2938 | 2946 |
| 136-27 | Paige Affidavit Exhibit 4 | 2963 | 2973 |
| 137 | City Motion for Summary Judgment | 3002 | 3027 |
| 141 | Memo. in Opp. to MSJ | 3090 | 3143 |
| 141-1 | Eric Pilya Deposition Transcript | 3144 | 3408 |
| 141-2 | Traci Shaw Deposition Transcript | 3409 | 3581 |
| 141-5 | Richard Bash Deposition Transcript | 3803 | 3968 |
| 141-8 | 2007 Training PowerPoint | 3971 | 4081 |
| 141-12 | Kimberly Jacobs Deposition Transcript | 4347 | 4543 |
| 141-14 | Bryan Mason IAB Excerpts | 4548 | 4588 |
| 145 | Mason MSJ Reply | 4790 | 4805 |
| 146 | City MSJ Reply | 4806 | 4814 |
| 150 | Summary Judgment Opinion and Order | 4843 | 4865 |
| 152 | Mason Notice of Appeal | 4867 | 4868 |

| ECF# | Document Description | First PageID# | Last PageID# |
|---|---|---|---|
| 160 | Opinion Dismissing Appeal | 4894 | 4904 |
| 190-1 | Anna Skora Deposition Designation | 5206 | 5322 |
| 212 | Notice of Final Pretrial Conference | 6939 | 6939 |
| 222 | Opinion and Order Regarding Expert | 7133 | 7144 |
| 223 | Evidentiary Rulings | 7145 | 7175 |
| 233 | Verdict | 7234 | 7237 |
| 236 | Plaintiff Post-Trial Motion | 7243 | 7276 |
| 237 | Opposition to Post-Trial Motion | 8315 | 8345 |
| 239 | Post-Trial Motion Reply | 8349 | 8361 |
| 240 | January 17, 2023 Trial Transcript | 8362 | 8452 |
| 241 | January 18, 2023 Trial Transcript | 8453 | 8676 |
| 242 | January 19, 2023 Trial Transcript | 8677 | 8891 |
| 243 | January 20, 2023 Trial Transcript | 8892 | 9145 |
| 244 | January 24, 2023 Trial Transcript | 9146 | 9257 |
| 245 | January 25, 2023 Trial Transcript | 9258 | 9266 |
| 246 | January 23, 2023 Trial Transcript | 9267 | 9482 |
| 247 | Opinion and Order re. Post-Trial Motion | 9483 | 9499 |
| 248 | Notice of Appeal | 9500 | 9502 |